**MOBIL OIL CORPORATION,**
Plaintiff-Appellee,

v.

**PEGASUS PETROLEUM CORPORA-TION, Defendant-Appellant.**

No. 582, Docket 86–7590.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1987.

Decided May 4, 1987.

Douglas W. Wyatt, New York City (Wyatt, Gerber, Shoup, Scobey & Badie, New York City, Thomas A. O'Rourke, William E. Marames, Mobil Oil Corp., Fairfax, Va., Edward H. Valance, Lawrence O. Miller, of counsel), for plaintiff-appellee.

Robert B.G. Horowitz, New York City (Eslinger & Pelton, P.C., New York City, Lewis H. Eslinger, Abigail F. Cousins, of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, LUMBARD, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Mobil Oil Corporation brought this action in the Southern District charging Pegasus Petroleum Corporation with trademark infringement and unfair competition, 15 U.S.C. § 1114(1); false designation of origin, 15 U.S.C. § 1125(a); and trademark dilution, N.Y.Gen.Bus.Law § 368-d. On July 8, 1986, after a three-day bench trial, Judge MacMahon entered judgment for Mobil on each of its claims, dismissed Pegasus Petroleum's counterclaims seeking to cancel Mobil's trademark registration, and enjoined Pegasus Petroleum from using the mark "Pegasus" in connection with the petroleum industry or related businesses. We affirm.

Mobil, one of the world's largest corporations, manufactures and sells a vast array of petroleum products to industrial consumers and to the general public. Since 1931, Mobil has made extensive use of its well known "flying horse" symbol—representing Pegasus, the winged horse of Greek mythology—in connection with its petroleum business. Mobil displays this registered trademark, usually in red, but occasionally in blue, black, white, or outline form, at virtually all its gasoline service stations (usually on an illuminated disk four feet in diameter); in connection with all petroleum products sold at its service stations; in connection with the sale of a variety of its other petroleum products; on its oil tankers, barges, and other vehicles; and on its letterhead. As the district court explained, it is "undisputed that Mobil's extensive use of the flying horse symbol for such a long period of time in connection

with all of Mobil's commercial activity has rendered it a very strong mark. Indeed, counsel for [Pegasus Petroleum] could think of few trademarks, if any, that were stronger trademarks in American commerce today."

As part of its petroleum business, Mobil buys and sells crude and refined petroleum products in bulk, an activity known as oil trading, to insure a continuous flow of oil to its refineries, and ultimately to its customers. The oil trading market is tight-knit and sophisticated: It encompasses a select group of professional buyers and brokers, representing approximately 200 oil companies, wholesalers, and oil traders; deals are in the hundreds of thousands, or millions of dollars, and in tens of tons; and, oil traders do not consummate deals with strangers except after a thorough credit check. Mobil does not use its flying horse symbol in connection with its oil trading business.

Pegasus Petroleum, incorporated in 1981, confines its activities to oil trading, and does not sell directly to the general public. Its founder, Gregory Callimanopulos, testified that he selected the name "Pegasus Petroleum" because he wanted a name with both mythical connotations and alliterative qualities. Callimanopulos admitted that he knew of Mobil's flying horse symbol when he picked the name, but claimed that he did not know that the symbol represented Pegasus or that Mobil used the word "Pegasus" in connection with its petroleum business. Shortly after the genesis of Pegasus Petroleum, Ben Pollner, then president of the company, sent a letter to 400–500 people in the oil trading business informing them about Pegasus Petroleum's formation. The letter stated that Pegasus Petroleum was part of the "Callimanopulos group of companies," and used an interlocking double P as a letterhead. Pegasus Petroleum has never used a flying horse symbol and sells no products with the name "Pegasus" on them.

In 1982, Mobil approached Pegasus Petroleum after learning of its use of the mark "Pegasus." When attempts to reach an agreement failed, Mobil filed the instant suit. The case proceeded to trial before Judge MacMahon, without a jury. After examining the criteria set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), Judge MacMahon concluded that "there is a sufficient likelihood of confusion between [Mobil's flying horse symbol] and [Pegasus Petroleum's use of the 'Pegasus' mark] to grant [Mobil] relief under the Lanham Act." Judge MacMahon also held for Mobil on its unfair competition, false designation, and antidilution claims; and enjoined Pegasus Petroleum's further use of the mark "Pegasus" in connection with the oil industry. With Mobil's consent, the injunction has been stayed, pending resolution of this appeal.

■ The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" where "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To state a claim under this section, a plaintiff must show a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam) (citing cases), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). A nonexclusive list of eight factors, articulated by Judge Friendly in *Polaroid, supra*, 287 F.2d at 495, helps guide this inquiry: (1) the strength of the plaintiff's mark: (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will "bridge the gap" between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers. We agree with both the district court's determination of each of the *Polaroid* factors and its balancing of those factors to arrive at its conclusion that Pe-

gasus Petroleum infringed upon Mobil's senior mark—the flying horse.[1]

Pegasus Petroleum does not dispute the district court's conclusion that the strength of Mobil's flying horse mark is "without question, and perhaps without equal." As an arbitrary mark—there is nothing suggestive of the petroleum business in the flying horse symbol—Mobil's symbol deserves "the most protection the Lanham Act can provide." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). On the other hand, Pegasus Petroleum vigorously attacks the district court's finding of similarity between the two marks, arguing that the district court erred by blindly equating the word "Pegasus" with its pictorial representation—Mobil's flying horse. While we agree that words and their pictorial representations should not be equated as a matter of law, a district court may make such a determination as a factual matter. *See, e.g., Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329 (6th Cir.) ("It is well settled that words and their pictorial representation are treated the same in determining the likelihood of confusion between two marks."), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973); *Izod, Ltd. v. Zip Hosiery Co.*, 405 F.2d 575, 577 (C.C. P.A.1969) ("Members of the purchasing public viewing appellant's pictorial representation of a feline animal as applied to men's and women's outer shirts and appellee's literal designation TIGER HEAD for men's work socks might well and reasonably conclude that the respective goods of the parties emanated from the same source."); *Instrumentalist Co. v. Marine Corps League*, 509 F.Supp. 323, 328 (N.D. Ill.1981) ("the fact that defendants' certificate most prominently displays a picture of Sousa (rather than a literal transcription of his name) does not preclude a finding of infringement"). *See generally* 2 J. McCarthy, *Trademarks and Unfair Competition*, § 23:8 at 68 & n. 10 (2d ed. 1984) (citing cases). Judge MacMahon made such a determination here:

> we find that the similarity of the mark exists in the strong probability that prospective purchasers of defendant's product will equate or translate Mobil's symbol for "Pegasus" and vice versa.
>
> We find that the word "Pegasus" evokes the symbol of the flying red horse and that the flying horse is associated in the mind with Mobil. In other words, the symbol of the flying horse and its name "Pegasus" are synonymous.

That conclusion finds support in common sense as well as the record.[2]

■■■ The third *Polaroid* factor addresses the competitive proximity between the two marks. Pegasus Petroleum points out that while Judge MacMahon correctly found that Mobil and Pegasus Petroleum both compete in the oil trading business, Mobil does not use its flying horse trademark in that field. However, "direct competition between the products is not a prerequisite to relief.... Confusion, or the likelihood of confusion, not competition, is

---

**1.** Mobil possesses a registered trademark, No. 287,746 for the flying horse symbol with the word "Pegasus" in block capital letters above it. This mark appears on Mobil's lubricating oils. Mobil also makes a number of other uses of the word "Pegasus" in connection with its petroleum business: it owns an oil field and a gas field in Texas, each named "Pegasus;" it uses "Pegasus" in related promotional activities, such as awards and newsletters; and several of Mobil's ships' names contain the word "Pegasus." As we decide that Pegasus Petroleum infringed on Mobil's flying horse trademark, we do not consider whether Mobil had other proprietary rights over the "Pegasus" mark in the oil trading field.

**2.** Even defense witnesses uniformly admitted that the word "Pegasus" evokes the symbol of the flying horse. Pegasus Petroleum's founder and owner Gregory Callimanopulos testified:

> Q. You just told me in Greek mythology the flying horse is in fact called pegasus. How can that be?
> A. Flying horse is a pegasus.

William Reardon, president of Pegasus Petroleum, made a similar admission:

> Q. What symbol came to your mind when you her [sic] the word Pegasus?
> A. A horse.
> Q. A flying horse?
> A. A flying horse.

Finally, Paul Macht, formerly an oil trader for Sun Oil Company, agreed:

> Q. What symbol comes to mind when you say the word Pegasus?
> A. A flying horse.

the real test of trademark infringement." *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861 (5th Cir.1967) (citations omitted). Both Mobil and Pegasus Petroleum use their marks in the petroleum industry. *See, e.g., AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir.1979) (competitive proximity may be found where goods are similar in use and function); *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir.1971) (same).

Moreover, competitive proximity must be measured with reference to the first two *Polaroid* factors: The unparalleled strength of Mobil's mark demands that it be given broad protection against infringers. *See, e.g., James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir.1976) ("A mark that is strong because of its fame or its uniqueness, is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products or services than is a mark that is weak...."); *R.J. Reynolds Tobacco Co. v. R. Seelig & Hille*, 201 USPQ 856, 860 (T.M.T.A.B.1978) ("the law today rewards a famous or well known mark with a larger cloak of protection than in the case of a lesser known mark because of the tendency of the consuming public to associate a relatively unknown mark with one to which they have long been exposed if the [relatively unknown] mark bears any resemblance thereto"). Mobil's ubiquitous presence throughout the petroleum industry further increases the likelihood that a consumer will confuse Pegasus Petroleum with Mobil. *See Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161 (5th Cir.1982) ("Diversification makes it more likely that a potential customer would associate the non-diversified company's services with the diversified company, even though the two companies do not actually compete."). Finally, the great similarity between the two marks—the district court concluded that they were "synonymous"—entitles Mobil's mark to protection over a broader range of related products. *Cf. Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980) (closely related products require less similarity to support a finding

of trademark infringement). We agree with the district court's finding of competitive proximity.

Our evaluation of the first three *Polaroid* factors, perhaps the most significant in determining the likelihood of confusion, *see Vitarroz v. Borden, Inc.*, 644 F.2d 960, 966 (2d Cir.1981), strongly supports the district court's conclusion that such a likelihood exists. The district court's finding under the fourth *Polaroid* factor that Pegasus Petroleum did not innocently select its potentially confusing mark reinforces this conclusion: Intentional copying gives rise to a presumption of a likelihood of confusion. *Perfect Fit Industries v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980) (citing cases). The district court discredited Gregory Callimanopulos's testimony that "he did not intentionally choose the tradename 'Pegasus' with either the symbol of Mobil's flying horse or Mobil's wordmark in mind." The court explained:

> Mr. Callimanopulos is obviously an educated, sophisticated man who, from his prior shipping business, was familiar with the flying horse and from his own background and education and awareness of Greek mythology could not have escaped the conclusion that the use of the word 'Pegasus' would infringe the tradename and symbol of the plaintiff.

In response, Pegasus Petroleum first contends that this finding is clearly erroneous given the objective evidence before the court, specifically pointing to its letter to the trade of June, 1982, which stated that it was a member of the Callimanopulos group of companies. While this correspondence was one piece of evidence for the district court to consider, it falls far short of establishing, by itself, Pegasus Petroleum's good faith. Pegasus Petroleum also notes that "actual and constructive notice of another company's prior registration of the mark ... [is] not *necessarily* indicative of bad faith, because the presumption of an exclusive right to use a registered mark extends only so far as the goods or services noted in the registration certificate." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir.

1979) (emphasis added). However, actual or constructive knowledge *may* signal bad faith. Indeed, "[i]n this circuit and others, numerous decisions have recognized that the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer." *Harold F. Ritchie Inc. v. Chesebrough-Pond's, Inc.,* 281 F.2d 755, 758 (2d Cir.1960) (footnote omitted); *see generally* 2 J. McCarthy, *supra,* § 23:33 at 148 ("Where we can perceive freedom of choice with full knowledge of a senior user's mark, we can readily read into defendant's choice of a confusingly similar mark the intent to get a free ride upon the reputation of a well-known mark."). We believe the record clearly substantiates Judge MacMahon's inference of bad faith.

The existence of some evidence of actual confusion, the fifth *Polaroid* factor, further buttresses the finding of a likelihood of confusion. *See, e.g., World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir.1971) ("While . . . it is not necessary to show actual confusion . . . [t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.") (footnotes omitted). Both Mobil and Pegasus Petroleum offered surveys of consumers and of members of the oil trading industry as evidence relating to the existence of actual confusion between the two marks. The district court properly admitted these surveys into evidence, despite claims of statistical imperfections by both sides, as those criticisms affected the weight accorded to the evidence rather than its admissibility. *See, e.g., Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1341 (2d Cir.1975). After reviewing these surveys, Judge MacMahon concluded that there was "evidence of actual confusion." His decision was not clearly erroneous. *Id.*

Pegasus Petroleum argues that the absence of misdirected mail and telephone calls between the parties, and the fact that Pegasus Petroleum must post a letter of credit as security during its oil trading deals while Mobil need not, prove that no actual confusion between the two firms existed. This argument misunderstands the district court's opinion. Judge MacMahon found a likelihood of confusion not in the fact that a third party would do business with Pegasus Petroleum believing it related to Mobil, but rather in the likelihood that Pegasus Petroleum would gain crucial credibility during the initial phases of a deal. For example, an oil trader might listen to a cold phone call from Pegasus Petroleum—an admittedly oft used procedure in the oil trading business—when otherwise he might not, because of the possibility that Pegasus Petroleum is related to Mobil. The absence of misdirected phone calls and the difference in the letter of credit requirements are other matters.

Pegasus Petroleum never rebutted the inference of a likelihood of confusion. The district court did not examine the sixth *Polaroid* factor—whether Mobil would "bridge the gap" by expanding its use of the flying horse symbol into the oil trading market (Mobil presently competes, but does not use its flying horse trademark, in the oil trading field). Nevertheless, "sufficient likelihood of confusion may be established although likelihood of bridging the gap is not demonstrated." *McGregor-Doniger, supra,* 599 F.2d at 1136. The absence of an intent to bridge the gap does not negate a finding of a likelihood of confusion in the market as presently constituted. *See Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1174 (2d Cir.1976). The Lanham Act extends trademark protection to related goods in order to guard against numerous evils in addition to restraints on the possible expansion of the senior user's market, including consumer confusion, tarnishment of the senior user's reputation, and unjust enrichment of the infringer. 2 J. McCarthy, *supra,* § 24:5 at 177–81.

The seventh *Polaroid* factor suggests that the court examine the quality of Pegasus Petroleum's product. The district court made no findings on this issue. Pegasus Petroleum argues that its product—oil—does not differ from that sold by Mobil. However, a senior user may sue to

protect his reputation even where the infringer's goods are of top quality. *See, e.g., Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983) ("Even if the infringer's goods are of high quality, the victim has the right to insist that its reputation not be imperiled by another's actions."); *James Burrough, Ltd. v. Ferrara*, 6 Misc.2d 692, 694, 165 N.Y.S.2d 825, 826 (Sup.Ct.1957) ("plaintiff is not required to put its reputation in defendant's hands, no matter how capable those hands may be"); 2 J. McCarthy, *supra*, § 24:5 at 176–77 ("If the other user sometime in the future engaged in false advertising, or cheated customs, or employed a rude salesperson, or simply sold some shoddy merchandise, the first user of the mark would suffer because buyers would link them together through the medium of the similar marks.").

We finally turn to the eighth *Polaroid* factor, the sophistication of purchasers. The district court concluded that, "even though defendant's business is transacted in large quantities only with sophisticated oil traders, there is still and nevertheless a likelihood of confusion." We agree. As explained above, the district court's concerns focused upon the probability that potential purchasers would be misled into an initial interest in Pegasus Petroleum. Such initial confusion works a sufficient trademark injury. *Steinway & Sons, supra*, 523 F.2d at 1342. The district court's concerns had a sufficient basis in fact despite the sophistication of the oil trading market: Pegasus Petroleum admits that it solicits business through telephone calls to potential customers. Pegasus Petroleum also acknowledges that "[t]rust, in the oil industry, is of paramount importance." Finally, Mobil's Oil Trading Department executive, Thomas Cory, testified that he did not undertake an investigation of a new company before initially dealing with it. Such an investigation was undertaken only prior to the culmination of a deal.

For the foregoing reasons, we agree with the district court's finding that Pegasus Petroleum infringed on Mobil's registered flying horse trademark and therefore affirm its judgment. Mobil's "unfair competition claim is governed by essentially the same considerations as its infringement claim." *Steinway & Sons, supra*, 523 F.2d at 1342 n. 21. Therefore, we also affirm the district court on Mobil's unfair competition claim. As the judgment finds full support in the district court's findings on Mobil's first two claims, we need not consider Mobil's other two claims—false designation of origin, and trademark dilution under New York law.

Affirmed.