**STREETWISE MAPS, INC., Plaintiff–Counter–Defendant–Appellant,**

v.

**VANDAM, INC., a corporation of the State of New York, and Steven Meuth, also known as Stephan Van Dam, Defendants–Counter–Claimants–Appellees.**

**Docket No. 97–7943.**

United States Court of Appeals, Second Circuit.

Argued March 13, 1998.

Decided Oct. 27, 1998.

Gerard F. Dunne, New York, New York (Eric Weiss, Law Offices of Gerard F. Dunne, New York, New York), for Plaintiff–Counter–Defendant–Appellant.

James N. Blair, New York, New York (Loselle Greenawalt Kaplan Blair & Adler, New York, New York), for Defendants–Counter–Claimants–Appellees.

Before: CARDAMONE, WALKER, and MAGILL*, Circuit Judges.

CARDAMONE, Circuit Judge:

Streetwise Maps, Inc. had a great idea when it began developing its simplified, foldable, laminated street map. But, as with most good ideas, imitators were quick to follow. This litigation concerns plaintiff Streetwise's attempt to eliminate from the marketplace one such imitator's product—defendants' StreetSmart maps. To accomplish that purpose, plaintiff brought an action against defendants under the Lanham Act and copyright law.

Competitors, by copying and underselling a product's originator, enjoy a "free ride" on an originator's efforts. Yet, since the common law favors competition, unless a plaintiff can establish that the defendant encroached on its trademark or copyright, the law will tolerate such conduct. Because plaintiff failed to make out a viable claim for either trademark or copyright infringement, we affirm the district court's dismissal of its complaint.

## BACKGROUND

Plaintiff Streetwise Maps, Inc. (Streetwise) began publishing maps in 1985. One of the first companies to market the laminated street maps now seen everywhere in the hands and shirt pockets of tourists, Streetwise currently produces such maps for many large international cities, including New York. Plaintiff owns the trademark, "STREETWISE," which it registered with the United States Patent and Trademark Office in 1985.

Defendants VanDam, Inc. and its president, Stephan Van Dam (Van Dam), entered the map-making business in 1984, a year earlier than Streetwise did. Their first line of maps were called "Unfolds," which were pop-up street maps of various cities, the sale of which was also aimed at tourists. Realizing that the trend of the major map publishers in the early 1990s was toward offering a foldable, laminated street map, defendants, to remain competitive, began selling their own version of such a map for New York City in 1995 under the trademark "StreetSmart." Van Dam testified he chose that name because he liked the combined effect the two separate words created. "Street" seemed like a good way to describe the product and "smart" connoted how informed the user who purchased the map would come to be about the city depicted. Put together, the name promoted the idea that the product's user would be smart about the streets of a given city.

VanDam, Inc. had already used the word "smart" in connection with its maps before 1995. In 1991 it produced a line of maps of Boston called the "Smartmap" for another map manufacturer's subsidiary. In addition, at the time it started selling the StreetSmart line in 1995, it also produced a "TravelSmart" map. Defendants informally searched the internet and a library for use of the StreetSmart name, but never conducted a formal trademark search. Van Dam testified that while he knew plaintiff already marketed a line of maps under the name Streetwise, he did not think the name he had chosen infringed on that mark.

\* Hon. Frank J. Magill, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

The StreetSmart map and plaintiff's Streetwise Manhattan map share some cartographic conventions, including the use of purple to depict water and a clarified white street grid superimposed on a gray landmass background. Defendants aver that the cartography of the StreetSmart map originated from their earlier New York City Unfolds map and a Manhattan map they had created for Macy's Department Store. While they knew plaintiff's map employed these two conventions at the time they designed their StreetSmart map, defendants insist these salient features plaintiff contends were copied had been in use for many years, predating plaintiff's Streetwise maps.

Plaintiff's and defendants' maps are about the same size, but the Streetwise map uses the traditional accordion fold, while the StreetSmart map employs a "triple gate fold." StreetSmart's Metro Edition also includes an eight-page inserted booklet describing the top sightseeing attractions with their addresses bound into the center of the map. The two companies use different color schemes on the covers of their maps. Van-Dam, Inc. prints "Street" in yellow (for the City Edition) or white (for the Metro Edition) and "Smart" in red, both words appear in a black rectangle. In contrast, plaintiff's "Streetwise Manhattan" is written in large white block letters, outlined in black, in a rectangle with a gold background. StreetSmart's New York City map also devotes half of its cover to a design using the letters "NYC" accompanied by an icon symbolizing New York, the Statue of Liberty. The cover of Streetwise's map shows the lower end of Manhattan.

As just stated, defendants began selling their StreetSmart New York City map in April 1995. In May plaintiff notified defendants that their map infringed upon its copyright. Defendants, nevertheless, continued to sell their map. As a result, on July, 14, 1995, Streetwise filed the instant action in the United States District Court for the Southern District of New York (Chin, J.) against VanDam, Inc. and Van Dam individually for trademark and trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; copyright infringement in violation of 17 U.S.C. § 101, *et seq.*; and unfair competition under New York law.

After a bench trial, Judge Chin, in an oral decision rendered on June 25, 1997, dismissed Streetwise's complaint in its entirety with prejudice. Relevant to this appeal, the trial court denied Streetwise injunctive relief on its trademark infringement claim because it found it unlikely that an appreciable number of purchasers would be confused as to the source of the maps. With respect to the copyright infringement claim, the trial judge held the evidence did not support the conclusion that defendants copied a protectible element of Streetwise's map. These holdings were reduced to a judgment entered on June 30, 1997.

Streetwise appeals the dismissal of its claim for injunctive relief under the Lanham Act and the dismissal of its claim for copyright infringement.

## DISCUSSION

### I Trademark Infringement

#### A. *Lanham Act Generally*

The Lanham Act protects the rights of the first user of a trademark, particularly where that mark is a strong one. Trademark law accomplishes this by barring a later user from employing a confusingly similar mark, likely to deceive purchasers as to the origin of the later user's product, and one that would exploit the reputation of the first user. *See Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1135 (2d Cir. 1982). The Lanham Act therefore makes a person who uses "any word, term, name, symbol, or device ... or any false designation of origin, false or misleading description of fact ... which is likely to cause confusion," liable in a civil suit to one damaged by such act. 15 U.S.C. § 1125(a)(1).

■ To prevail on a claim of trademark infringement, a plaintiff must show that the defendant (1) without permission, copied, reproduced, or imitated the plaintiff's (2) registered trademark in commerce (3) as part of the sale or distribution of goods or services (4) and that such use is likely to cause confusion between the two marks. *See id.*

§ 1114(1)(a); *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). It is undisputed in the instant case that defendants were without Streetwise's permission to use the StreetSmart mark, that the mark was used in commerce as part of the sale or distribution of goods, and that "Streetwise" is a registered trademark entitled to protection. Thus, the only issue we must decide is whether the district court erred when it determined that defendants' use of the StreetSmart mark is unlikely to cause confusion between their and Streetwise's mark. *See Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 390–91 (2d Cir. 1995) (reasoning that because the defendant did not dispute the validity of the plaintiff's mark, the only question before the court was whether defendant's use of a similar mark was likely to cause confusion).

■ To support a finding of infringement, a probability of confusion, not a mere possibility, must exist. *See Gruner + Jahr,* 991 F.2d at 1077; *see also Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1510 (2d Cir. 1997) ("Likelihood of confusion means a probability of confusion; 'it is not sufficient if confusion is merely "possible." ' ") (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 23:2, at 23–10 to –11 (1996)). A probability of confusion may be found when a large number of purchasers likely will be confused as to the source of the goods in question.

■ To measure the likelihood of confusion, courts ordinarily will weigh the so-called *Polaroid* factors: (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961); *see also Thompson Med. Co. v. Pfizer Inc.,* 753 F.2d 208, 213–14 (2d Cir.1985). These factors are not always dispositive, *see Estee Lauder,* 108 F.3d at 1510, and other factors may be added

or initial factors abandoned. *See Gruner + Jahr,* 991 F.2d at 1077. A district court's findings with regard to each individual factor are subject to the clearly erroneous standard of review, but the ultimate issue of the likelihood of confusion is reviewed *de novo. See id.*

### B. *Review of the* Polaroid *Factors*

■ Of the eight factors examined in this case, one is neutral and another irrelevant. Factor (# 7)—the quality of defendant's product compared to plaintiff's—is neutral because—as the district court found and plaintiff concedes—both maps are of similar quality. *See Gruner + Jahr,* 991 F.2d at 1079 (Quality is weighed against the defendant only "when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product."). The (# 4) factor—bridging the gap—is not relevant because, in assessing this factor, we consider the likelihood that the plaintiff will enter the market occupied by the defendant's product to compete against the defendant. *See id.* at 1078. Since plaintiff and defendants already occupy the same market of simplified, laminated street maps, the gap has been bridged. In addition, this factor is subsumed by one to be discussed in a moment, that is, the competitive proximity of the products, and thus is not relevant as an individual factor.

Of the six remaining *Polaroid* factors, the district court found three in plaintiff's favor and three in defendants'. We begin by tracing the three factors found for Streetwise: the strength of the mark (# 1), the similarity of the two marks (# 2), and the proximity of the two products (# 3).

### Factor # 1—Strength of Streetwise's Mark

■ The strength of a mark refers to its distinctiveness, that is to say, the mark's ability to identify goods sold under it as coming from one particular source. *See McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). To gauge a mark's strength, we consider two factors: its inherent distinctiveness, and its distinctiveness in the marketplace. *See W.W.W.*

*Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993). Discussing the former first, courts classify a mark in one of four categories in increasing order of inherent distinctiveness: generic, descriptive, suggestive, and arbitrary. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976) (Friendly, J.). The district court ranked the Streetwise mark as suggestive, meaning that the term "suggested" the features of the product and required the purchaser to use his or her imagination to figure out the nature of the product. We agree. Suggestiveness, however, does not necessarily determine the issue regarding the strength of the mark. *See W.W.W. Pharm.*, 984 F.2d at 572 ("But a finding of suggestiveness does not guarantee a determination that the mark is a strong one."). We must still consider the mark's distinctiveness in the marketplace.

"Streetwise" is not particularly distinctive in the marketplace. Other map manufacturers have used the word "street" in their product's names. For example, Rand McNally publishes a book of maps under the name, "StreetFinder," and other map-related products include "Streetmate" and "Streetscene." Moreover, a trademark search revealed the extensive use of the words "street" and "wise" in names registered by manufacturers of other products. Such third party use of the words "street" and "wise" weakens the strength of Streetwise's mark. *See Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir.1991) ("[E]xtensive third party use of the words 'Choice' and 'Choices' weighs against a finding that Lang's trade name is strong."); *see also Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir.1983).

Hence, although plaintiff's product is ranked as suggestive for its inherent distinctiveness, it is not strong in the marketplace for maps. As a consequence, the district court's finding that plaintiff's mark is "relatively strong" is clearly erroneous. While Streetwise's mark is entitled to some trademark protection, it should not receive the fullest protection available under the law, *see W.W.W. Pharm.*, 984 F.2d at 573, unless a convincing combination of other *Polaroid* factors militates strongly in favor of finding that a likelihood of confusion exists. *See Plus Prods.*, 722 F.2d at 1006.

*Factor # 2—The Similarity of the Two Marks*

■ In determining whether the two marks are similar, and therefore likely to provoke confusion among prospective purchasers, courts appraise "the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr*, 991 F.2d at 1078. The district court found the two marks to be very similar. Because we are firmly persuaded that in making this finding the trial judge was mistaken, we set that finding aside as clearly erroneous.

While the two names sound similar, the trademarks themselves are not confusingly similar, given the context in which a purchaser sees them. *See, e.g., Arrow Fastener Co.*, 59 F.3d at 396 (concluding that defendant's use of a six-digit model number that contained the symbol "T50" was not confusingly similar to plaintiff's use of the mark, "Model T–50"); *W.W.W. Pharm.*, 984 F.2d at 573 (finding the two marks "Sportstick" and "Right Guard Sport Stick" distinct because of the second user's addition of the company name and *different mode of presentation*); *Lang*, 949 F.2d at 582 (holding that defendant's use of the name "New Choices for the Best Years" was not confusingly similar to plaintiff's mark, "New Choices Press," based in part on the defendant's inclusion of additional words and use of a different typeface).

Several key distinctions may be observed between the products themselves and the overall impression created by the marks that would lead consumers to believe the products originated from different companies. For example, although the two maps are similar in size, they have different folds (VanDam's triple gate unfold versus Streetwise's accordion unfold), different logos (e.g., VanDam, Inc.'s use of the large NYC and Lady Liberty logos), and different dress colors and typefaces. Further, while Streetwise appears as one word, StreetSmart, because of its color

scheme, appears as two separate words. Moreover, while the mark "StreetSmart" stands by itself and encompasses roughly one-twelfth of the cover, "Streetwise" appears together with "Manhattan" and uses one-third of the cover's space. Hence, in our view the marks are not confusingly similar.

### Factor # 3—The Proximity of the Two Products

This factor considers whether the two products compete in the same market. *See Lang,* 949 F.2d at 582. The district court found that the two products compete in close proximity—both are aimed primarily at visiting tourists who are shopping for a convenient map. We agree that this factor weighs in favor of Streetwise's argument that there is a likelihood of confusion.

The three *Polaroid* factors Judge Chin believed weighed in defendants' favor were: (# 5) actual confusion, (# 6) defendant's good faith, and (# 8) sophistication of purchasers. We review his findings regarding these factors.

### Factor # 5—Actual Confusion

■ As discussed earlier, the Lanham Act seeks to prevent public confusion as to the origin of products, and to prevent a second user who chooses a confusingly similar mark from exploiting the goodwill a first user has created for its trademark. *See Spring Mills,* 689 F.2d at 1135. Hence, evidence of *actual* consumer confusion is particularly relevant to a trademark infringement action. *See Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 963–64 (2d Cir.1996). In the instant case plaintiff failed to proffer any credible evidence of actual confusion between the two products. Streetwise does not contest this finding on appeal. Accordingly, the absence of proof of actual confusion, although not dispositive of the question of likelihood of confusion, *see Arrow Fastener Co.,* 59 F.3d at 397, is a factor favoring defendants.

### Factor # 6—Van Dam's Good Faith

This factor examines whether defendants "adopted [their] mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [their] and [plaintiff's] product." *Lang,* 949 F.2d at 583; *see also Arrow Fastener Co.,* 59 F.3d at 397. The district court found defendants acted in good faith when they adopted the StreetSmart trademark. Like other map manufacturers, Judge Chin reasoned, defendants probably copied the size and concept of Streetwise's map, but not in an effort to mislead consumers into believing that they were buying Streetwise Manhattan. The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product. *See George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1541 (2d Cir.1992) ("Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a 'free ride' is permitted."). The trial judge concluded that defendants' lack of bad faith was a "significant factor" in rendering its decision in favor of defendants.

Unlike the issue of actual confusion, Streetwise vigorously disputes this finding on appeal. It declares that defendants acted in bad faith because they adopted the StreetSmart trademark despite knowing that the trademark was registered and without first seeking the advice of trademark counsel. Streetwise relies on *International Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753–54 (2d Cir. 1996), to support its argument. In that case, clothing designer Tommy Hilfiger copied verbatim for his line of sportswear the plaintiff's trademark, "Star Class," used in yacht racing. Hilfiger limited its trademark search solely to registered or applied-for *federal* trademarks, despite its attorney's specific advice that a wider search be conducted. Holding that Hilfiger acted in bad faith, we stated that its choice not to perform a more thorough trademark search "remind[ed] us of two of the famous trio of monkeys who, by covering their eyes and ears, neither saw nor heard any evil." *See id.* at 753–54.

The instant case is distinguishable. Defendants did not copy an identical trademark as did Hilfiger, but rather concocted a different name by combining a descriptive word, "street"—commonly used in map products—with another word they had used in previous

projects, "smart," to indicate what the user would become if he purchased the product. *See Arrow Fastener Co.,* 59 F.3d at 397 (stating that a finding of good faith may be supported by the defendant's selection of a mark that reveals the product's attributes). They did not believe this mark infringed on plaintiff's because of differences between the two marks. Defendants' failure to perform an official trademark search, even with the knowledge that plaintiff marketed its maps under the Streetwise name, does not standing alone prove that they acted in bad faith. *Cf. id.* ("Prior knowledge of a senior user's trade mark ... may be consistent with good faith.").

Streetwise also relies on *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254 (2d Cir.1987), where we found that the defendant acted in bad faith when it copied the mark of Mobil Oil Corp.'s flying horse symbol in its name. *See id.* at 258–59. There, the trial court discredited the testimony of the defendant oil company's representative, who was knowledgeable of Greek mythology and who attempted to argue that he did not choose the name, pegasus, with plaintiff's winged horse in mind. *See id.* at 258. Here, Judge Chin believed Van Dam's testimony that he chose the name with the twin goals of describing and promoting his product, not to ride on the coattails of Streetwise. Because the determination of good faith, "like many intent issues, is best left in the hands of the trier of fact," *Sports Auth.,* 89 F.3d at 964, we will not disturb as clearly erroneous the finding of defendants' good faith.

### Factor # 8—The Sophistication of the Buyers

Likelihood of confusion must be assessed by examining the level of sophistication of the relevant buyers. A trial court must consider the general impression of the ordinary consumer, buying under normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue. *See W.W.W. Pharm.,* 984 F.2d at 575. The district court found that due to the fact that the subject maps were rarely offered for sale at the same place and were generally impulse purchases, any lack of so-phistication among buyers could not contribute to confusion between the two maps. Streetwise does not contest this finding.

### C. De Novo *Review of Likelihood of Confusion*

Having considered the district court's treatment of each of the individual *Polaroid* factors, we review its weighing of those factors *de novo.* Our task is simplified because we set aside as clearly erroneous the trial court's findings regarding the strength of plaintiff's mark and the similarity between the plaintiff's and defendants' marks, factors the district court weighed in plaintiff's favor. Although the maps continue to compete directly with each other, the combined weight of the *Polaroid* factors leads us to hold that there is not a likelihood consumers will be confused by defendants' use of the StreetSmart mark. Streetwise's trademark infringement claim brought under the Lanham Act therefore fails, and the district court's dismissal of that claim must be affirmed.

### II Copyright Infringement

The other issue challenged on appeal is the district court's dismissal of Streetwise's copyright claim. Streetwise maintains that defendants infringed on the copyright of its map by using the same shade of purple to depict water and a clarified street grid.

### A. *Registration of a Valid Copyright*

As a preliminary matter, defendants declare plaintiff cannot sustain its copyright infringement action because it did not prove registration of a valid copyright covering the work it now claims they infringed. The Copyright Act requires that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a).

At trial, Streetwise relied upon a certificate of copyright registration filed on August 3, 1989. That certificate states that the work it protects is *derivative* of a "Streetwise Manhattan map carrying a copyright notice date of 1984, 1985." The supposed additions to the earlier map were depictions of the subway and bus systems. Defendants argue

that this registration certificate only covers the subway and bus notations on the 1988 map, and not the pre-existing map referred to in the certificate. Thus, because Streetwise did not offer proof of registration of the earlier map itself, they conclude it cannot now sustain an infringement action for their alleged infringement of the earlier map.

On the contrary, because Streetwise is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work. That plaintiff need not produce a separate registration relating to the pre-existing work is a proposition which finds support in other courts and in the writings of scholarly commentators. *See, e.g., Greenwich Film Prods. v. DRG Records, Inc.*, 833 F.Supp. 248, 251–52 (S.D.N.Y.1993) (copyright registration of derivative work sufficient for copyright infringement action based on pre-existing work where plaintiff owned the copyrights for both the derivative and pre-existing work); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][2] (1997) (copyright owners of derivative work that own pre-existing work should be able to pursue copyright infringement action against individuals infringing the pre-existing work, even when only derivative work registered); *see also Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y.1996) (registration of copyright for collective work satisfies requirements of 17 U.S.C. § 411(a) to bring copyright infringement action based on constituent parts where owner of copyright for collective work also owns constituent parts).

### B. *Infringement of the Copyright*

 Having decided that Streetwise is entitled to maintain a copyright infringement action, we turn to the substantive issue of whether defendants actually infringed on Streetwise's copyright. To prove infringement, a plaintiff must show that: (1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a "substantial similarity" exists between the defendant's work and the protectible elements of

the plaintiff's work. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995); *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122–23 (2d Cir.1994).

 A plaintiff may prove the first requirement by introducing direct evidence of copying, or by showing that "the defendant had access to the plaintiff's work and that the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Fisher–Price*, 25 F.3d at 123. In this case, although it failed to offer direct evidence that defendants copied its map, Streetwise satisfied the copying requirement because it established that defendants had access to the Streetwise maps and, as noted, there are sufficient similarities between the two maps to support an inference of copying. *Cf. id.* ("In the context of deciding whether the defendant copied at all (as distinguished from whether it *illegally* copied), 'similarity' relates to the entire work, not just the protectible elements.") (alteration in original).

 The second requirement, that there be a substantial similarity between the protectible elements of the two works, is more troublesome. In considering substantial similarity between two items, a court must ask whether "an average lay observer would ... recognize the alleged copy as having been appropriated from the copyrighted work." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir.1991). Because the street locations, landmass, bodies of water and landmarks depicted in a map are physical facts, the only material in a map capable of copyright protection—and thus demanding comparison—is original material. *Cf. Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350–51, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (holding that a compilation of facts is not capable of copyright protection unless it demonstrates sufficient originality).

Understanding this distinction between the unprotected and protected elements of copyrighted work, Streetwise's copyright infringement claim centers on the colors it selected to portray New York's geographical facts: purple to represent water and the use of a clarified white street grid. The district court entered judgment in favor of the defendants because it did not find the use of a

particular color to be protectible. Streetwise cites two cases in support of its argument that its use of color is entitled to copyright protection: *Knitwaves,* 71 F.3d at 996, and *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090 (2d Cir.1977). In *Knitwaves,* a clothing manufacturer produced a sweater that allegedly infringed on the plaintiff's copyrights of its sweaters. The second comer's sweaters featured substantially similar designs, including the same symbols (leaves and squirrels) on similar backgrounds in virtually the same color scheme. *See id.* at 1004. We found the sweater design as a whole was entitled to copyright protection, not one particular color used. *See id.* at 1004 ("In this case, Knitwaves' 'original contribution' consists ... in (1) selecting leaves and squirrels as its dominant design elements; (2) coordinating these design elements with a 'fall' palette of colors and with a 'shadow-striped' (for the Leaf Sweater) or a four-paneled (for the Squirrel Cardigan) background; and (3) arranging all the design elements and colors into an original pattern for each sweater."). Similarly, in *Novelty Textile Mills,* we focused on the two works' designs as a whole, not simply the specific colors used. *See* 558 F.2d at 1093 n. 5 ("[B]oth fabrics use brown and camel or beige on a light-colored background to form a plaid design consisting of intersecting diamonds with an interior dimension of approximately four inches. And in each fabric, one series of diamonds is formed by a stripe which is somewhat broader than the other.").

Hence, instead of examining the maps feature-by-feature, viewing the individual colors chosen by Streetwise as the protected elements upon which defendants encroached, we focus on the overall manner in which Streetwise selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content. *See Feist Publications,* 499 U.S. at 350, 111 S.Ct. 1282; *see also Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 142 (5th Cir.1992) (plaintiff's maps were original because they "possess[ed] sufficient creativity in both the selection, coordination, and arrangement of the facts that they depict, and ... in the pictorial, graphic nature of the way that they do so"). Under this more generalized approach, the two companies' maps leave us with sufficiently different impressions. Although both maps use clarified street grids and purple to depict water, the other colors used are entirely different: yellow and aqua for Streetwise Manhattan; peach, lavender, blue, and green for StreetSmart.

The proof shows, in addition, that Richard Edes Harrison created an atlas for Time, Inc. in 1943 that showed the oceans in purple. NASA also has used the color purple for water as has the National Oceanic and Atmospheric Administration. The Hagstrom City Slicker Maps, one of the largest map companies in the United States, used purple in 1993 to depict water in New York City and in its other city maps. With regard to the use of a clarified street map, the New York Metropolitan Transportation Authority bus and subway maps employ a similarly colored street grid, as do City Slicker Maps and Gousha Fast Maps. Streetwise admitted the clarified grid system used by both plaintiff and defendant was in common use and, quite obviously, purple water and clear street grids are cartographic conventions that have been used since 1943.

StreetSmart also uses proportionally wider streets and more colors to identify major streets (e.g., blue for avenues and major cross-streets and peach for major highways), and it depicts some of New York's major landmarks (e.g., the Chrysler and Empire State Buildings) with miniature replicas of the buildings. Finally, the two maps specially identify different types of places of interest: Streetwise indicates the location of hospitals, churches, and each different subway line with symbols; StreetSmart marks the locations of post offices and heliports.

As a consequence, because the total concept and overall feel created by the two works may not be said to be substantially similar, the district court's dismissal of Streetwise's copyright infringement claim must be affirmed.

## CONCLUSION

Accordingly, for the foregoing reasons, the judgment of the district court is affirmed.