COLLOTON, Circuit Judge,
concurring in the judgment in part and dissenting in part.
Applying the multiple factors identified in circuit precedent as bearing on the likelihood of confusion in a trademark infringement or unfair competition case, see Frosty Treats, Inc. v. Sony Computer Entm’t Am., Inc., 426 F.3d 1001, 1008 (8th Cir.2005), I conclude that there are genuine issues of material fact that preclude summary judgment on that ground. Because the district court dismissed claims advanced by Sensient Technologies Corporation (“Sensient”) under the Lanham Act (Counts 1-3), the Missouri common law (Count 4), and Mo.Rev.Stat. § 417.056(1) (Count 5), based on its conclusion that there is no likelihood of confusion as a matter of law, I would reverse the district court’s judgment in part and remand for further proceedings.[4]
I agree with the court that a reasonable jury could find that Sensient has a fanciful trademark in the name Sensient Flavors that is entitled to the highest level of protection, and that Sensient Flavors and SensoryEffects Flavor Company are direct competitors who sell flavor delivery systems to food companies. I disagree, however, that no reasonable jury could find that other factors in the analysis favor Sensient.
On the question whether the alleged infringer intends to pass off its good as the trademark owner’s goods, the circumstances of this case support a reasonable inference in favor of Sensient. The president of the alleged infringer, Charles Nicolais, is a former president of Sensient Colors, Inc., a sister company of Sensient Flavors. Shortly after Nicolais moved from Sensient to the defendant, the new company selected the name “SensoryFlavors” to compete with “Sensient Flavors.” This led the district court to find a “strong inference of Defendant’s intent to confuse the public.” R. Doc. 21, at 7. After the district court preliminarily enjoined the defendant from using the name “SensoryFlavors,” the company retreated to the name “SensientEffects Flavor Company,” rejecting the suggestion of a company vice president to omit the word “Flavor” from the official name and parent logo. Appellants’ App. 275-76. Nicolais denied in an affidavit that he was aware that the brand or trademark “Sensient Flavors” even existed, but Sensient discovered from the defendant an internal document dated February 2008 that listed “Sensient Flavors” as a “primary competitor” of the newly-named “SensoryFlavors, Inc.” Id. at 270. The credibility of Mr. Nicolais is obviously a disputed issue for a jury.
Intent is proved by circumstantial evidence, and from these circumstances, a reasonable jury could find that the defendant, having been rebuffed in its efforts to use the name SensoryFlavors to generate confusion with Sensient Flavors, still intended to confuse the public by shifting to the name of SensientEffects Flavor Com *772 pany. To be sure, we have said that “Knowledge of another’s product and an intent to compete with that product” is not the same as intent to cause consumer confusion, Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir.1987), but this is not a garden-variety “intent to compete” case. Sensient’s contention is that the defendant knew of the “Sensient Flavors” mark and intentionally selected a very similar mark — first, SensoryFlavors and then SensientEffects Flavor Company — in order to benefit from confusion that would arise from the similarity of names. Particularly given the initial effort by a former Sensient executive to use the name SensoryFlavors, a jury reasonably could infer that the defendant’s choice of the fallback name was still motivated in part by an intent to confuse consumers. See Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 927 (10th Cir.1986) (“[Djeliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another,” and “[t]he inference of intent is especially strong when the parties have had a prior relationship.”). The permissible inferences about the defendant’s intent weigh strongly against summary judgment. See Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 465 (7th Cir.2000) (“The fact that one actively pursues an objective greatly increases the chances that the objective will be achieved,” and “[f]or this reason, a defendant’s intent is an important factor, and can be weighed more heavily than other factors.”) (internal quotations and citations omitted); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir.1987) (“Intentional copying gives rise to a presumption of a likelihood of confusion.”).
On the question of similarity of the owner’s mark and the alleged infringer’s mark, a reasonable jury also could find in favor of Sensient Flavors. The evidence shows that the products at issue are marketed by telephone, so it is the similarity of sound (not trade dress or logo) that is relevant. Sensient argues that SensoryEffects is likely to cause “initial interest confusion” when it uses a similar-sounding name to market its products to customers in “cold” telephone calls. The doctrine of “initial interest confusion” — “infringement based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion” — is widely accepted, see 4 J. McCarthy, Trademarks and Unfair Competition § 23:6 (4th ed.2010), and SensoryEffects offers no convincing reason why this court should not adopt it. In that context, the aural similarity of SENSient Flavors and SENSoryEffects Flavor (with “Company” as an immaterial add-on) is sufficient for a jury to weigh this factor in favor of the plaintiff. Of course, “the use of identical dominant words does not automatically equate to similarity between marks,” ante, at 765 (emphasis added), but unlike the authorities cited by the court, Frosty Treats, Inc., 426 F.3d at 1008-09; Luigino’s, Inc. v. Stoujfer Corp., 170 F.3d 827, 831 (8th Cir.1999); Duluth News-Tribune v. Mesabi Publ’g Co., 84 F.3d 1093, 1096 (8th Cir.1996); Gen. Mills, Inc., 824 F.2d at 627, visual distinctions in trade dress do not ameliorate the harm caused by confusingly similar names where auditory similarity is the key issue. Cf. ante, at 765 (“Sensient’s suggestion to place particular emphasis on the verbal effect of the marks is not without merit.”).
That a company’s customers are sophisticated does not establish as a matter of law that there is no likelihood of confusion. If the sophisticated oil traders in Mobil Oil Corp., 818 F.2d 254, “might listen to a cold phone call from Pegasus Petroleum ... when otherwise he might not, because of the possibility that Pegasus Petroleum is related to Mobil,” id. at 259, even though *773 the possible relationship between those entities required inferences based on knowledge of both Mobil’s mark and Greek mythology, then a reasonable jury could reach a similar conclusion here. A sophisticated purchaser of flavor delivery systems might take a cold call from a fast-talking salesperson attempting to pitch a customer on behalf of “SENSoryeffects Flavor Company” when the buyer is familiar with, or accustomed to dealing with, “SENSient Flavors [Company].” Whether or not a sophisticated customer eventually would sort out the difference, the doctrine of initial interest confusion prevents an infringer from using another’s mark to gain “crucial credibility during the initial phases of a deal.” Id. (emphasis added).
The court relies on Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc., 269 F.3d 270 (3d Cir.2001), for the proposition that careful and sophisticated customers make initial interest confusion less likely, ante, at 765-66, but Checkpoint Systems considered findings made by a district court after a trial, and held that the district court’s finding of no likelihood of confusion was not clearly erroneous. Id. at 298. Checkpoint Systems did not hold that customer sophistication justified summary judgment against claims of initial interest confusion. The court’s discussion of initial interest resolved that “[i]ts significance will vary, and must be determined on a case-by-case basis.” Id. at 297.
Given the issues of fact surrounding several elements of the analysis, the absence of evidence of actual confusion on this record does not justify summary judgment. The other factors — the strength of the Sensient Flavors mark, the high degree of direct competition, the auditory similarity of the marks in a market characterized by telephone sales, and the evidence of intent to confuse — are sufficient to support a finding that the defendant’s mark is likely to confuse. See Eli Lilly, 233 F.3d at 465-66 (holding that although there was no evidence of actual confusion, “the other factors — especially the similarity of the marks, the strength of the [plaintiffs] mark, and [the defendant’s] intent to confuse — strongly supported] the district court’s ultimate conclusion” to grant a preliminary injunction under the Lanham Act). The court makes a reasonable argument that there is no likelihood of confusion, and a jury may reach that conclusion after evaluating credibility and weighing the evidence, but the record does not demonstrate as a matter of law that the court’s determination is the only reasonable outcome.
For these reasons, I would reverse the grant of summary judgment on Counts 1-5 and remand for further proceedings.

. I concur in the judgment affirming the district court's decision on the claims relating to the SensoryFlavors mark. Ante, at 760-63. I also concur in the judgment affirming the dismissal of Sensient’s claim under the Missouri anti-dilution statute, Mo.Rev.Stat. § 417.061(1), because this is a dispute between competitors who sell similar goods. See Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 833 (8th Cir. 1999); Viacom, Inc. v. Ingram Enters., Inc., 141 F.3d 886, 891 n. 9 (8th Cir.1998); 4 J. McCarthy, Trademarks and Unfair Competition § 24:74 (4th ed.2010).