**IVOCLAR NORTH AMERICA, INC., Plaintiff,**

v.

**DENTSPLY INTERNATIONAL, INC., Defendant.**

**No. 98 Civ. 3812(RLC).**

United States District Court, S.D. New York.

Dec. 21, 1998.

**276**

Amster, Rothstein & Ebenstein, New York City, Neil M. Zipkin, Denise A. Lindenauer, of Counsel, for Plaintiff.

Lebensfeld Borker & Sussman LLP, New York City, Steven Sussman, of Counsel, MC Nees, Walker & Nurick, Harrisburg, PA, Harvey Freedenberg, Alan R. Boynton, Jr., Franklin A. Miles, Jr., of Counsel, for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Ivoclar North America, Inc. ("Ivoclar"), brings this action against defendant, Dentsply International, Inc. ("Dentsply"), asserting trademark infringement and designation of false origin claims under the Lanham Act, 15 U.S.C. § 1114(1)(a) and § 1125(a)(1)(A), and common law trademark infringement and unfair competition claims. In June, 1998, Ivoclar filed a motion for a preliminary injunction against defendant, which the court denied on July 29, 1998 on the grounds that plaintiff, on the basis of its submissions to the court, was unlikely to succeed on the merits. The matter was set down for an evidentiary hearing on September 1, 1998. Now before the court is plaintiff's motion for a preliminary injunction, in light of the additional evidence produced at the September 1 hearing.

## BACKGROUND

Ivoclar, a Delaware corporation with its principal place of business in Amherst, New York, is a distributor of dental laboratory equipment and dentists' professional supplies. It began business in the United States in 1933 and among other materials, it manufactures, distributes, and sells products dentists use in the replacement, reconstruction, and restoration of teeth. This, it does through Ivoclar Vivadent, one of its two divisions.

Ivoclar Vivadent manufactures and distributes direct dental restoratives—tooth filling materials, such as silver filling material or amalgam alloy, used by dentists to fill cavities. Since June, 1993, Ivoclar Vivadent has been engaged in the manufacture, distribution, and sale of ultrasonically welded dental capsules containing amalgam alloy under the trademark Sure Cap. The product is a capsule in which the tooth restorative materials, consisting of various amalgams, are mixed. Those amalgams are marketed under variations of the trademark Valiant.

Dentsply, a Delaware corporation with its principal place of business in York, Pennsylvania, is one of the world's largest manufacturers and distributors of dental products and equipment, including the products dentists use in the replacement, reconstruction, and restoration of teeth. Prior to June, 1993, Dentsply was the manufacturer and distributor of the capsule marketed under the Sure Cap mark and the amalgam alloys marketed under the mark Valiant and its variations. In June, 1993, Dentsply divested itself of the Sure Cap and Valiant marks and products in Canada and the United States. That business was sold to plaintiff with all rights, title, and interest in the trademark Sure Cap, Valiant, Valiant Ph.D, Valiant Ph.D -XT and Snap Set, together with the goodwill of the business. Dentsply retained the right to use these marks in connection with the manufacture, marketing, and sale of dental capsules and tooth restorative products in the rest of the

world and continues to exercise that right at present. Furthermore, under the 1993 agreement, Dentsply is allowed to sell in the United States and Canada an electrostatistically sealed capsule which is similar to, but different from, Sure Cap. (Tr. 59).

In March, 1998, defendant began the distribution and sale of SureFil. Like Valiant, SureFil is a tooth restorative filling material, but is a composite (non-amalgam) material consisting of resin and glass fillers which can be colored to replicate tooth structure. (Tr. 105–06). The product is advertised and promoted as having the qualities of amalgam in packability, durability, and feel, and as being compatible with the tools dentists use with amalgam.

Thus, SureFil and Valiant are tooth restorative materials that go directly into the cavity. Sure Cap, in contrast, is the delivery system in which the dentist prepares Valiant for placement in the cavity.

Both corporations sell their products through the same authorized retail dealers, trade shows, journals, and periodicals, and directly to dentists. For example, both parties' products are advertised in all the major dealer catalogs, which are a major source of reference in the ordering of dental supplies. (Tr. 21). These catalogs feature the products of many different companies, and in each case the name of the manufacturer of the product is prominently displayed along with the product being advertised. For example, Sullivan Schein, the largest dealer of dental products in the United States (Tr. 20), in its catalog advertising SureFil, highlights defendant's name as its manufacturer (Tr. 113), and accords the same treatment to Ivoclar on the catalog pages advertising Sure Cap and Valiant. (Tr. 46).

Furthermore, in the Sullivan Schein catalogs, products are grouped into categories. Amalgams such as plaintiff's Valiant are displayed in one section of the catalog at pages 27 through 31. SureFil, being a composite, is shown in another section of the catalog at pages 79 through 96. (Tr. 83). Additionally, Valiant and Sure Cap are advertised and promoted together as an entity. (Tr. 65). Sure Cap is not listed or featured separately in the catalogs, but is always advertised with Valiant or one of its variants. Additionally, in the advertisements, Valiant or its variants are more prominently displayed than Sure Cap. (Tr. 77–78). Also, Sure Cap is not listed in the index of the current Sullivan Schein catalog, although Valiant can be found in the index. (Tr. 82).[1]

Sales representatives of both companies also promote sales of the products to dealers and dentists. Dental dealers typically visit dental offices to promote the products of the various manufacturers of dental products they are authorized to represent. Both plaintiff and defendant educate the distributors and dealers handling their products as to how the products function. (Tr. 43). When a dealer or distributor seeks to sell a new product to a dentist or dental assistant, he brings the product to the dentist's office and shows the dentist or dental assistant how it operates. (Tr. 42). After becoming familiar with the product and being satisfied with it, the dentist or dental assistant places orders for the product by use of the dealers' catalogs. Products are also purchased from advertisements in dental journals and periodicals, and through telemarketing.

Plaintiff has actively advertised and promoted the Sure Cap product and trademark in various trade periodicals directed to dentists and at many industry trade shows which plaintiff attends each year. It also offers programs and incentives to dealers and dentists to promote the sale of the Sure Cap product. Sales at Ivoclar have increased 500% in the past five years and over the past six months sales of

1. Other dealers' catalogs generally follow the same practice of grouping products into different categories (Tr. 45), although in the May, 1998 issue of the Journal of the American Dental Association, defendant's SureFil was advertised on pages 528 and 529 and plaintiff's Valiant and Sure Cap products were advertised on page 531. (Tr. 71–72).

Valiant have been stable. (Tr. 48). Furthermore, SureFil has had no impact on the volume of sales of Ivoclar's composite restorative products. (Tr. 49).

SureFil was launched in March, 1998. About $500,000 was spent on the initial promotion, marketing, and advertising of SureFil. (Tr. 110). Samples of the product were sent to dentists prior to the start of the promotional effort to allow them to use it. Defendant's sales people, as they do with any new product, went to dealers and spent time familiarizing them with the features of SureFil, demonstrating how to use the product. Defendant's sales personnel also visited dentists to make a sales pitch to encourage the dentists to try out the product.

Thus far, SureFil has had the largest sales volume of any product defendant has launched. Between late March, 1998, the date it was first marketed, and September 1, 1998, the date of the hearing, retail sales in the United States were approximately $4 million (Tr. 120) and is expected to reach $7 million in the United States and Canada during the balance of its first year. (Tr. 121). Of these estimates, the defendant's share of the $4 million retail sales estimate would approximate $2.5 million, and its share of the projected $7 million in retail sales would be $4.2 million. (Tr. 141).

In April, 1998, when plaintiff became aware of defendant's use of the SureFil trademark, it sent a letter to defendant demanding that it cease and desist using the SureFil trademark since such use constituted infringement of the Sure Cap mark. Defendant refused to discontinue use of the SureFil mark.

Defendant has two other registered trademarks with a "Sur" prefix—SurFlex and SurStop—which are attached to dental products and plaintiff has registered no complaint about these marks. (Tr. 52, 123). The owner of these marks is a division or subsidiary of defendant named Maillefer. (Tr. 124). In preparation for the preliminary injunction hearing defendant discovered additional trademarks related to dental products with a "Sur" or similar prefix: ShurWax, which is used to take impressions of the bite where the teeth meet (Tr. 124); and SurGel, an alginate impression material used mostly for orthodonture impressions. (Tr. 125). Both products are marketed by a company named Heraskulzer, a non-party to this action. (Tr. 125).

## DETERMINATION

### A. Preliminary injunction standard

In order to obtain injunctive relief, a party must demonstrate irreparable harm and "either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985). Even under the "serious questions" criterion, the movant must establish the possibility of irreparable harm unless relief is granted, *see Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976), and must show that its potential harm outweighs whatever damage the issuance of an injunction will cause the defendant. *See N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2d Cir. 1995).

### B. Likelihood of success on the merits on the trademark infringement and false designation of origin claims

The purpose of trademark law is to protect the public from deception and confusion which results from copying trademarks or using marks so similar to one already in use that the public is likely to buy goods bearing the new mark believing the goods were those appurtenant to the senior mark. *See W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868, 871 (2d Cir.1966). Accordingly, to prevail on either an infringement or false designation of origin claim under the Lanham Act, plaintiff

must show that it has a valid mark that is entitled to protection and that defendant's actions are likely to cause confusion. *See* 15 U.S.C. § 1114(1) & § 1125(a)(1)(A); *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996). To prevail on a common law trademark infringement claim, plaintiff's proof must mirror what is required under the Lanham Act. *See Tri–Star Pictures, Inc. v. Leisure Time Productions*, 17 F.3d 38, 43 (2d Cir. 1994).

### a. Protectability

■ Defendant assigned the Sure Cap mark to plaintiff in 1993 when it divested itself of Sure Cap and Valiant products in Canada and the United States. However, due to plaintiff's delay in filing the necessary documents with the United States Patent and Trademark Office, the Sure Cap mark was not registered under plaintiff's name until April 14, 1998. (Tr. 133). While this five year delay seems somewhat cavalier, there is no advantage to defendant since it sold the mark to plaintiff and necessarily had knowledge of plaintiff's ownership of the mark. Accordingly, Sure Cap's registration assures its validity and protectability. *See Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993).

### b. Likelihood of confusion

The decisive issue is whether plaintiff has established a likelihood of confusion. *See e.g., The Sports Auth., Inc.*, 89 F.3d at 960. Each case must be decided on its own facts, as prior decisions based on different facts and different marks generally offer little specific guidance in an instant case. *See American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 627 (5th Cir. 1963). The yardsticks to be applied in determining this issue are set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), and expanded upon in subsequent decisions. *See Cadbury Bever-*

*ages, Inc. v. Cott Corp.*, 73 F.3d 474, 477–78 (2d Cir.1996); *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 502 (2d Cir.1996); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390–91 (2d Cir.1995); *The Sports Auth., Inc.*, 89 F.3d at 960.

These factors include (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the plaintiff will bridge the gap between the two products; (5) actual confusion between the two marks; (6) the defendant's good faith in adopting its mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers or users of the parties' goods or services. *See Polaroid Corp.*, 287 F.2d at 495. These factors do not exhaust the possible factors that may be taken into account. *See Arrow Fastener Co.*, 59 F.3d at 391. Additional considerations, such as the potentially severe harm to the defendant against a small gain for the plaintiff if injunctive relief is granted, also play a part. *See Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir.1985). Furthermore, "the evaluation of the Polaroid factors is not a mechanical process," *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir.1993), and no single factor is determinative. *See Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir.1991).

### Factor # 1: Strength of the mark

■ The strength of a particular mark is measured by "its distinctiveness or the degree to which it indicates the source or origin of the product." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir.1992) (citing *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). To gauge a mark's strength, the court considers two factors: its inherent distinctiveness, and its distinctiveness in the marketplace. *See W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993). To gauge a mark's inherent distinctiveness,

courts have used four categories: generic, descriptive, suggestive, and arbitrary or fanciful. *See id.* at 572. A generic mark is not entitled to protection under the Lanham Act, while arbitrary marks will almost always be seen as strong marks. *See The Sports Auth., Inc.,* 89 F.3d at 961.

The court finds that the mark Sure Cap is suggestive, meaning that the term "suggests" the features of the product and requires the purchaser to use his imagination to figure out the nature of the product. *See Arrow Fastener Co.,* 59 F.3d at 391. "Sure" suggests reliability. "Cap" connotes the capsule in which the restorative material is contained. However, a finding of suggestiveness does not guarantee a determination that the mark is strong. *See W.W.W. Pharm. Co.,* 984 F.2d at 572. The court must still consider the mark's distinctiveness in the marketplace.

Defendant has established that Sure and phonetically equivalent spellings are used as a prefix in a variety of marks used with dental products. The plaintiff uses Sure–Vest; defendant uses SurFlex and Sur–Stop (Tr. 52, 123); Sure, Sure Check, Pre–Sure, Sure Choice, SurGel and SureFire are registered marks of other manufacturers of dental products. (Def.'s Brief in Opp. at 7–8; Def.'s Exs. R, S; Tr. 124). Plaintiff has pending registration of Sure Flow and defendant has pending registration of SureFil (Def. Brief in Opp., *supra*). Thus, Sure Cap is not particularly distinctive in the marketplace of dental products. *See Western Publ'g Co. v. Rose Art Indus., Inc.,* 910 F.2d 57, 61 (2d Cir.1990) ("[T]he origin-indicating quality of the mark is undercut by other parties' registration of . . . trademarks incorporating the [same term]"); *Lang,* 949 F.2d at 581 (extensive third party use of the same term weighs against finding that trademark is strong). As a consequence, even though Sure Cap is suggestive, the mark is weak and deserves less than the full protection available under the Lanham Act. *See W.W.W. Pharm. Co.,* 984 F.2d at 573.

**Factor # 2: Similarity of marks**

■ The test for determining similarity is whether the marks in question convey the " 'same general overall impression' " to the purchasing public when seen separately. *See Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.,* 680 F.2d 891, 893 (2d Cir.1982) (quoting *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 (2d Cir.1979)). In deciding whether the marks are similar, the court looks at the visual and aural similarity of the marks, in addition to how they are presented in the marketplace. *See The Sports Auth., Inc.,* 89 F.3d at 961; *Arrow Fastener Co.,* 59 F.3d at 394 ("[C]ourts are to consider 'all factors that could reasonably be expected to be perceived by and remembered by potential purchasers [including] the context in which the respective marks are generally presented.' ") (quoting *McGregor–Doniger Inc.,* 599 F.2d at 1133). The ultimate determining issue is whether the similarity is likely to cause confusion. *See Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 77 (2d Cir.1988).

While the marks themselves are presented in a similar, albeit non-distinctive, typeface, the court finds that they are not confusingly similar given the context in which the purchaser sees them. Sure Cap is never marketed alone. It is always marketed with Valiant or some variety of Valiant. Indeed, since Sure Cap is a capsule designed to contain the tooth restorative materials which the dentist uses, joint marketing of the capsule and the tooth restorative materials is essential. SureFil, in contrast, is marketed as a single entity. The dissimilarity of the modes of presentation makes confusion less likely. *See W.W.W. Pharm. Co.,* 984 F.2d at 573. Moreover, each party prominently displays its corporate name on all advertisements of its products. That goes far to eliminate the possibility of confusion. *See id.; Arrow Fastener Co.,* 59 F.3d at 395 (finding defendant's use of "T50" not confusingly similar to plaintiff's "T–50" based in part

of both parties' prominent display of their company names on products).

### Factor # 3: Proximity of the products; and Factor # 8: Sophistication of the purchasers

■ The "proximity of products" inquiry looks at whether and to what extent the products compete with one another. *See Cadbury Beverages, Inc.*, 73 F.3d at 480. The court considers " 'the nature of the products themselves and the structure of the relevant market,' " which takes into account the class of customers to whom products are sold, the manner in which the products are advertised, and the channels through which the goods are sold. *See id.* (quoting *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir.1981)).

■ The "sophistication of purchasers" factor is "analogous" to the "proximity of products" inquiry. *See Vitarroz Corp.*, 644 F.2d at 967. This *Polaroid* factor recognizes that the likelihood of confusion depends on the " 'level of sophistication of the relevant purchasers.' " *The Sports Auth., Inc.*, 89 F.3d at 965 (quoting *W.W.W. Pharm. Co.*, 984 F.2d at 575). It is analogous to the "proximity of products" factor as the court considers in part the " 'general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.' " *Id.*

The court finds that it is unlikely that a dentist or a dental assistant will confuse Sure Cap with SureFil. First, Sure Cap and SureFil are sufficiently distinct particularly to the discerning professionals who buy and use the products in question. Sure Cap is a delivery system, while Sure-Fil is a tooth filling material. Although Valiant and SureFil are similar as both are tooth restorative materials, Sure Cap, a capsule, has no similarity to SureFil except that both have the same prefix. While plaintiff and defendant may be attempting to reach the same market—specifically, dentists and dental assistants—the prod-

ucts are sufficiently different to find that this factor weighs against Ivoclar. *See, e.g., The Sports Auth., Inc.*, 89 F.3d at 963 (finding products sufficiently different even though parties were attempting to reach the same market and were using at least one advertising medium simultaneously).

The manner in which the goods are advertised and the channels in which the products are sold also significantly diminish the likelihood of confusion. First, the dealer catalogs that act as a major source of reference in the ordering of dental supplies group products by category: amalgams such as Valiant and composites such as Sure Cap are generally contained in different sections of the catalog. Second, as previously mentioned, Valiant and Sure Cap are always advertised as a single entity, and identified as products of Ivoclar; SureFil, on the other hand, is always advertised by itself and identified as a product of Dentsply. Lastly, the court notes that the fact that dental products, including Valiant, Sure Cap, and SureFil, are sold in person by knowledgeable sales representatives militates against any possible confusion between Sure Cap and SureFil.

Moreover, the consumers in this instance are sophisticated professionals. The products are critical to their success as dentists. The Sure prefix is not going to lead them astray, since that prefix is a common mark on a variety of dental products. *See, e.g., Bristol–Myers Squibb Co.*, 973 F.2d at 1046 ("Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product.").

The court concludes that the "proximity of products" and "sophistication of purchasers" factors weigh against a finding of a likelihood of confusion since it is not probable that the ordinary prudent consumer in the dental market will confuse the products themselves, nor the origin of

the products. *See also Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1511 (2d Cir.1997) (test for confusion "is not whether confusion is possible; nor is it whether confusion is probable among consumers who are not knowledgeable.").

### Factor #4: Likelihood that plaintiff will bridge the gap

The "bridging the gap" factor considers whether the senior user may wish to enter the defendant's market in the future. *See Paddington Corp.*, 996 F.2d at 586. As plaintiff and defendant have acknowledged that they occupy the same market, there is no gap to bridge. Thus, this factor is irrelevant to the court's likelihood of confusion determination. *See id.; Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir.1998).

### Factor #5: Actual confusion

Evidence of actual confusion is "particularly relevant to a trademark infringement action." *See Streetwise Maps, Inc.*, 159 F.3d 739, 743 (citing *The Sports Auth., Inc.*, 89 F.3d at 963–64). In the same vein, "[w]hile a plaintiff need not prove actual confusion in order to prevail, it is certainly proper for [the court] to infer from the absence of actual confusion that there [is] also no likelihood of confusion." *McGregor–Doniger Inc.*, 599 F.2d at 1136 (citations and internal quotation marks omitted).

As evidence of actual confusion, plaintiff has submitted an affidavit by its Vice President of Sales stating that an unnamed dentist approached the Ivoclar booth at a trade show and inquired about the SureFil product. (Lamoure Decl. ¶ 26). However, the single instance of actual confusion cited by plaintiff is de minimis in light of the large volume of sales of both products. *See, e.g., C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985) (finding two instances of actual confusion "insignificant" given voluminous sales of products). Thus, this factor also weighs against Ivoclar.

### Factor #6: The defendant's good faith in adopting its mark

The "good faith" factor considers "'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'" *W.W.W. Pharm. Co.*, 984 F.2d at 575 (quoting *Lang*, 949 F.2d at 583). One indicia of defendant's good faith is the selection of a mark that "reflects the product's characteristics." *See id.* Defendant testified at the evidentiary hearing that it chose the mark SureFil based on the idea that "Sure" represents surety that the cavity is "filled" by the product. (Tr. 109). Such an assertion is reasonable, especially in light of the other dental products whose marks trade upon the connotation of a "Sure" prefix.

While it is undisputed that defendant had full knowledge of plaintiff's use of the Sure Cap mark, such knowledge "does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co.*, 59 F.3d at 397. Given the court's finding that SureFil is descriptive of defendant's product, and a lack of affirmative evidence demonstrating bad faith, this factor weighs against plaintiff.

### Factor #7: Quality of the products

This factor can be relevant if the senior user's reputation could be "'tarnished by [the] inferior merchandise of the junior user.'" *Cadbury Beverages, Inc.*, 73 F.3d at 483 (quoting *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1172 (2d Cir.1976)). As plaintiff has made no claim to that effect, and does not dispute the high quality of defendant's products, the court concludes that this factor is neutral. *See Gruner + Jahr USA Publ'g*, 991 F.2d at 1079.

### Review of the Polaroid factors

As each of the relevant factors either weighs against plaintiff or is neutral, the court finds that there is no likelihood of confusion between Sure Cap and Sure-

Fil. Thus, plaintiff's infringement and false designation of origin claims are not likely to succeed on the merits.

### C. Likelihood to succeed on the merits on the common law unfair competition claim

■ Plaintiff has not demonstrated that its common law unfair competition claim will likely succeed on the merits. The elements of an unfair competition claim are essentially the same as the elements of a claim for false designation of origin under the Lanham Act, which requires a showing of the likelihood of confusion. *See Revlon Consumer Products Corp. v. Jennifer Leather Broadway, Inc.*, 858 F.Supp. 1268, 1278 (S.D.N.Y.1994) (Cedarbaum, J.) *aff'd* 57 F.3d 1062 (2d Cir.1995). The one difference is that an unfair competition claim may require a showing of defendant's bad faith. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. Central to this notion is some element of bad faith.") (citations omitted). As has been demonstrated, plaintiff has not satisfied the elements of the Lanham Act claims, nor has it demonstrated defendant's bad faith. Thus, the court concludes that plaintiff is unlikely to succeed on the merits with regard to its unfair competition claim.

### D. Balance of hardships

■ Having found that plaintiff is unlikely to succeed on the merits on its statutory and common law claims, the court now considers whether plaintiff is entitled to a preliminary injunction on the ground that it has demonstrated sufficiently serious questions going to the merits to make them a fair ground for litigation and that the balance of hardships tips decidedly in the its favor. *See LeSportsac, Inc.*, 754 F.2d at 74.

At the preliminary injunction hearing, plaintiff conceded that it had experienced no financial loss in sales of any of its products with the introduction of SureFil. Its sales have increased overall some 500 percent in the last five years, and over the past six months sales of Valiant have been stable. (Tr. 48). Even sales of its composite tooth restorative products with which SureFil competes have been unaffected. (Tr. 49).

In contrast, defendant stands to lose several million dollars in estimated sales of SureFil in the United States and Canada during its first year. It would cost roughly $4–5 hundred thousand to reintroduce the product and reproduce all the materials made with the SureFil logo (Tr. 125), and it would take roughly six months to introduce the product with a new name.

As plaintiff has not demonstrated that the balance of hardships tips decidedly in its favor, a discussion of whether plaintiff has presented "sufficiently serious questions" is unnecessary.

### CONCLUSION

Plaintiff has failed to demonstrate that it will likely succeed on the merits on its statutory and common law claims. Plaintiff has also failed to show that a balance of hardships tips decidedly in its favor. The motion for injunctive relief therefore is denied.

**IT IS SO ORDERED.**