**BANFI PRODUCTS CORPORATION,**
**Plaintiff,**

v.

**KENDALL–JACKSON WINERY,**
**LTD. Defendant.**

**No. 96–CV–1211 (TCP).**

United States District Court,
E.D. New York.

July 1, 1999.

Richard D. Rochford, Jr., Garden City, NY, for Plaintiff.

David H.T. Kane, Kathleen E. McCarthy, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele and Richard, New York City, for Defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff Banfi Products Corporation commenced this action against defendant Kendall–Jackson Winery, Ltd. on March 14, 1996, seeking a declaratory judgment of non-infringement.  In the alternative, plaintiff has asserted claims for: (1) trademark infringement in violation of the Lanham Act § 32(1), 15 U.S.C. § 1114; (2) unfair competition/false designation of origin and false advertising, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law trademark infringement.

In response, defendant Kendall–Jackson Winery, Ltd. has asserted counterclaims for: (1) false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition in violation of N.Y.Gen.Bus. Law § 368–e; and (3) unfair business practices in violation of N.Y.Gen.Bus. Law § 349.  Additionally, Kendall–Jackson Winery, Ltd. seeks an order canceling Banfi's federal trademark registration No. 1,743,450 for COL–DI–SASSO.

This Court conducted a six-day bench trial that concluded on February 25, 1999,

with post-trial arguments held on April 30, 1999.[1] This Memorandum and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the following reasons, this Court finds that there is no likelihood of confusion and accordingly directs the Clerk of the Court to enter a Judgment of non-infringement.

## Findings of Fact

### A. Parties

Plaintiff Banfi Products Corporation ("Banfi") is a New York corporation whose principal place of business is in the Village of Old Brookville, Nassau County, New York. (Tr. 31:17.)[2] At present, Banfi is the largest importer of Italian wines in the United States, importing as much as sixty to seventy percent of all Italian wines coming into this country. (Tr. 668:16–22.) Banfi also imports wines produced by its affiliated companies in Montalcino and Strevi, Italy. (Tr. 33:20–25.) Domestically, Banfi produces a chardonnay wine in Old Brookville, New York, distributed primarily on Long Island and in Manhattan. (Tr. 68:25–70:5.)

Defendant Kendall–Jackson Winery, Ltd. ("Kendall–Jackson") is a California corporation with its principal place of business in Santa Rosa, California. (Joint Pre–Trial Order, Schedule M, Stipulated Fact No. 2.) In 1994, Kendall–Jackson purchased the Robert Pepi Winery, located in Napa Valley, California. (Joint Pre–Trial Order, Schedule M, Stipulated Fact No. 6.)

### B. COL–DI–SASSO

Banfi imports and sells COL–DI–SASSO, which is produced by an affiliate of Banfi in the Tuscan region of Italy. (Tr. 667:22–668:6.) Dr. Ezio Rivella, Banfi's general manager of Italian operations, conceived of the name COL–DI–SASSO in Montalcino, Italy in 1989 or 1990. (Tr. 34:4–35:21.) COL–DI–SASSO is an Italian term meaning "hill of stone." (Joint Pre–Trial Order, Schedule M, Stipulated Fact No. 9.) It was named for a particular rock known as "sasso," prevalent in the region of Tuscany. (Tr. 675:8–13.)

Originally, COL–DI–SASSO was introduced as a Cabernet Sauvignon wine. (Joint Pre–Trial Order, Schedule M, Stipulated Fact No. 14.) Soon thereafter, however, Banfi changed COL–DI–SASSO to a 50–50 blend of Sangiovese and Cabernet. (Tr. 163:1–4.) Banfi began selling this new blend in early 1993. (Tr. 163:16–22.)

COL–DI–SASSO's trade dress is very distinctive. Its front label includes an orange-yellow depiction of a landscape, surrounded by a green-black marbleized background. (Pl.'s Ex. 117.) The name COL–DI–SASSO is featured prominently on the front label, as are the words "Sangiovese" and "Cabernet." (Pl.'s Ex.117). The back label includes the following legends: (1) "Red Table Wine of Tuscany;"(2) "Banfi S.R.L.;" (3) "50% Sangiovese—50% Cabernet Sauvignon;" (4) "Banfi Vinters;" and (5) "Produce of Italy." (Pl.'s Ex. 117.)

1. Prior to post-trial arguments, Banfi moved this Court to exclude defendant's 1998 sales documents pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. After reviewing the arguments for both sides, this Court concludes Kendall–Jackson's 1998 sales figures should be admitted into evidence. Accordingly, Banfi's Motion is denied. Having carefully reviewed each of these sales documents, however, this Court finds that they have no effect on this Court's finding that no likelihood of confusion exists between the two marks at issue.

In addition, Kendall–Jackson moved: (1) to compel production of documents submitted for *in camera* review; and (2) for reconsideration of this Court's refusal to admit defendant's exhibit TT into evidence. As to Kendall–Jackson's first Motion, this Court has reviewed the documents *in camera* and concludes that they, too, have no effect on the instant finding of no likelihood of confusion. Therefore, this Motion is denied. Moreover, having reconsidered its refusal to admit defendant's exhibit TT into evidence, this Court adheres to its prior decision on grounds that defendant's exhibit TT relates to a proposed settlement and therefore is inadmissible.

2. "Tr." refers to the transcript of the trial.

Additionally, the word "Banfi" appears in black script on the cork used in bottles of COL–DI–SASSO. (Tr. 441:12–13.)

In 1991, Banfi introduced COL–DI–SASSO to the Italian market, and sold substantial quantities from that point forward throughout Europe. (Tr. 35:24–36:3.) Banfi sent its first shipment of COL–DI–SASSO, consisting of two bottles, to the United States in late 1991. (Tr. 38:18–22.) Yet commercial distribution and sales of COL–DI–SASSO in the U.S. did not commence until the Spring of 1992. (Tr. 38:23–25.) On or about December 29, 1992, the United States Patent and Trademark Office ("PTO") issued Banfi federal trademark registration No. 1,743,450 for COL–DI–SASSO. (Pl.'s Ex. 53.)

By late 1993, Banfi began to experience a sharp increase in U.S. sales of COL–DI–SASSO. To date, over 27,000 cases of COL–DI–SASSO have been sold in the United States. (Pl.'s Ex.115). In 1998, Banfi's total U.S. sales in dollars of COL–DI–SASSO exceeded $1.3 million. (Pl.'s Ex. 112.)

COL–DI–SASSO's success is attributable, in part, to the fact that Banfi expends vast sums of money each year on advertising and promotions for COL–DI–SASSO, to wit, $190,000 in 1998, $160,000 in 1997, $140,000 in 1996, and $113,000 in 1995. (Tr. 45:6–10.) In promoting COL–DI–SASSO, Banfi uses point-of-sale materials such as displays, brochures, table tents, which are pieces of cardboard placed on restaurant tabletops featuring images of a designated wine bottle, and bottle collars placed over the necks of COL–DI–SASSO bottles. (Tr. 44:19–45:1, 49:9–18.)

Banfi sells COL–DI–SASSO to wine and spirit distributors throughout the United States, who in turn distribute the wine to restaurants and retail establishments. (Tr. 43:23–44:10.) Banfi markets COL–DI–SASSO as an affordable, everyday Italian red wine. (Tr. 52:17–23.) Accordingly, Banfi encourages its distributors to place the wine in discount liquor stores, supermarkets, and mid-range Italian res-taurants such as the Olive Garden and Macaroni Grill. (Tr. 51:8–11, 53:15–54:3.) COL–DI–SASSO sells for between $8 and $10 per bottle in stores (Tr. 39:2–3), and for anywhere from $16 to $23 per bottle in restaurants. (Tr. 56:5–6.) Restaurants also feature COL–DI–SASSO by the glass as a promotional tool. (Tr. 56:7–15.)

Since its introduction, COL–DI–SASSO has received generally favorable reviews from the media. In May 1994, the *Houston Chronicle* praised Banfi's 1991 vintage of COL–DI–SASSO, giving the wine "4 stars—a Cabernet-sauvignon-sangiovese blend, is molto buono, capisce?" (Pl.'s Ex. 68 at 57.) In 1995, the *Providence Journal–Bulletin* described the flavor of Banfi's 1992 vintage of COL–DI–SASSO as "rustic and nicely Tuscan." (Pl.'s Ex. at 45.) The following year, the *Washington Post* opined that the 1994 vintage of COL–DI–SASSO is a "versatile, affordable, everyday wine that will complement burgers, poultry, and ... red meat" with its "bright, forward, quaffable style." (Pl.'s Ex. 37.) Finally, in 1997, the *Port St. Lucie News* recognized the 1995 COL–DI–SASSO as its pick of the week, describing the wine as "dark in color and import, smooth and spicy, full-bodied and fairly silky and deeply imbued with peppery raspberry and blackberry flavors." (Pl.'s Ex. 58.)

## C. ROBERT PEPI COLLINE DI SASSI

The other wine at issue in this case is ROBERT PEPI COLLINE DI SASSI, produced by the Robert Pepi Winery in Napa Valley, California. In July 1994, defendant Kendall–Jackson Winery ("Kendall–Jackson") purchased the Pepi winery and has continued to produce COLLINE DI SASSI ever since. In late 1989 or early 1990, Robert A. Pepi and his son Robert L. Pepi, founders of the Pepi winery, arrived at the name ROBERT PEPI COLLINE DI SASSI while eating dinner together. (Tr. 243:20–245:10.)

Directly translated, ROBERT PEPI COLLINE DI SASSI means "Robert Pepi little hills of stone." (Tr. 261:4–6.) The "Colline" element of ROBERT PEPI COLLINE DI SASSI is a three-syllable word pronounced "Col-ee-ne." (Tr. 260:17–261:3, 302:8–11, 358:10–12.) Although ROBERT PEPI COLLINE DI SASSI is labeled solely as a Sangiovese varietal, it contains a small amount (typically 15%) of cabernet. (Tr. 370:1–2, 357:5–15.)

Since the introduction of ROBERT PEPI COLLINE DI SASSI, its trade dress has gone though several changes. Up through the 1993 vintage, the front label on bottles of ROBERT PEPI COLLINE DI SASSI was long and narrow with a jagged top edge. (Pl.'s Ex. 114.) The Words "Robert Pepi," "Colline Di Sassi," and "Napa Valley" all appeared on the front label in gold block lettering superimposed on a mauve background. (Pl.'s Ex. 114.) Beginning with the 1994 vintage, the front label again was long and narrow, but was brown-black in hue with a jagged edge along the right side. (Pl.'s Ex. 19.) The front label still contained the legends "Robert Pepi," "Colline Di Sassi," and "Napa Valley" in gold block lettering. (Pl.'s Ex. 19.)

The current trade dress of ROBERT PEPI COLLINE DI SASSI consists of a rectangular wrap-around front label. The label is orange and cream, bearing the legend "Robert Pepi" in black script in the top left corner. (Pl.'s Ex. 113.) The words "Colline Di Sassi" and "Napa Valley Sangiovese" are centered on the front label in black print. (Pl.'s Ex. 113.) The back label reiterates that the wine is produced and bottled in Napa Valley California. (Pl.'s Ex.113).

In September 1990, ROBERT PEPI COLLINE DI SASSI labels were approved by the Bureau of Alcohol, Tobacco and Firearms ("BATF"). (Pl.'s Ex. 1.) Of considerable significance, the label approval application listed "ROBERT PEPI" as the "brand name" and "COLLINI (sic) DI SASSI" as the so-called "fanciful name." (Pl.'s Ex. 1.) Thereafter, in October 1990, Pepi began to distribute the 1988 vintage of ROBERT PEPI COLLINE DI SASSI throughout the United States. (Tr. 246:2–8.)

Since then, distribution of ROBERT PEPI COLLINE DI SASSI has been relatively limited. Annual case sales of defendant's wine have ranged from 133 cases in 1990, to 462 in 1991, 689 in 1992, 301 in 1993, 170 in 1994, 996 in 1995, 903 in 1996, 37 in 1997, and 1345 in 1998. (Pl.'s Ex. 139.) Pepi did not produce a 1994 vintage of ROBERT PEPI COLLINE DI SASSI due to concerns over quality. (Tr. 286:23–287:4.) Moreover, from 1990 through 1998, advertising expenditures for ROBERT PEPI COLLINE DI SASSI, both by Pepi and Kendall–Jackson, have been minimal. (Tr. 263:18–25.)

Kendall–Jackson distributes ROBERT PEPI COLLINE DI SASSI to independent distributors, who in turn sell the wine to restaurants and retail stores. (Tr. 545:20–24.) ROBERT PEPI COLLINE DI SASSI has been marketed as an high-end, limited production wine. (Tr. 252:6–19.) In fact, after its purchase of the Pepi winery in 1994, Kendall–Jackson included ROBERT PEPI COLLINE DI SASSI as part of its "Artisans & Estates" stable of high-end, specialty wines. (Tr. 580:3–10.) Accordingly, both Pepi and Kendall–Jackson have tried to place ROBERT PEPI COLLINE DI SASSI in better or high-priced restaurants and wine shops, as opposed to chain restaurants and discount stores. (Tr. 252:6–19, 263:2–12.) ROBERT PEPI COLLINE DI SASSI sells for $20 to $25 per bottle in stores (Tr. 252:11–12, 582:23–583:1), and from $35 to $45 or more in restaurants. (Pl.'s Ex. 3, 70.) Due to its high cost, ROBERT PEPI COLLINE DI SASSI generally is not sold by the glass in restaurants. (Tr. 442:14–18.)

While arguably not directly relevant to the question of likelihood of confusion, it

should be noted that the cuttings used by Pepi to produce ROBERT PEPI COLLINE DI SASSI in California were brought into the United States illegally. (Tr. 264:1–11.) Robert L. Pepi, the former head of the Pepi winery, allegedly "grafted the vines to Sangiovese" in 1985, and harvested the first crop of grapes in 1988. (Tr. 243:9–14.) In reality, however, the vine cuttings of Sangiovese, later used in producing ROBERT PEPI COLLINE DI SASSI, were knowingly smuggled into this country illegally in wooden barrels to avoid quarantine. (Tr. 265:1–10.) These facts also may be of some relevance to Pepi's BATF application, which lists "Robert Pepi" as the brand name and "Colline di Sassi" as the "fanciful name." *See infra* note 3.

## D. Nature of Dispute

This dispute arose in 1994 when John Mariani, Banfi's Chairman Emeritus, saw a reference to the Pepi wine in an article published in *USA Today*. (Pl.'s Ex. 30.) The article, entitled "California vineyards take on an Italian accent," listed "ROBERT PEPI COLLINO (sic) DI SASSI" as one of several California wines using such Italian grape varietals as Sangiovese. (Pl.'s Ex. 30.) It should be noted that up until the date of the *USA Today* article, John Mariani had never heard of the mark ROBERT PEPI COLLINE DI SASSI. (Tr. 683:21–24) John Mariani faxed the article to several officers of Banfi with the following handwritten direction: "[s]top Robert Pepi from using 'COLLINO' (sic) DI SASSI." Ask JM. *It is a region not in USA. Recall 'Walnut Creek'* (Pl.'s Ex. 30) (emphasis added). Mr. Mariani objected to Pepi's use of the name "COLLINE DI SASSI" because, in his view, it was inappropriate for a California wine to be using

a name that implied a connection with the Grande Sasso, a rock located in Italy's Appenine Mountains. (Tr. 674:14–676:13.) [3]

A copy of Mariani's facsimile was presented to Philip Calderone, Banfi's Vice President and General Counsel who, like Mariani, had not heard of ROBERT PEPI COLLINE DI SASSI until that point. (Tr. 215:2–6.) In response, Calderone, without further discussing the matter with Banfi's owners, wrote a letter to Pepi on March 9, 1994, demanding that Pepi cease marketing ROBERT PEPI COLLINE DI SASSI because of the risk of consumer confusion. (Tr. 215:15–17.) The letter read as follows:

Dear Mr. Pepi:

It has come to the attention of Banfi Vinters that your winery is marketing a California red wine named "Colline di Sassi." Being the U.S. trademark holder.of the brand name "Col di Sasso" (sic) used for a tuscan red wine, Banfi feels there is a confusing similarity between the two brand names.

I respectfully request that you choose another name for the referenced product, achieving a phase-out and cease and desist status on the "Colline di Sassi" name which conflicts with our trademark. A copy of our U.S. trademark is enclosed for your information, and I look forward to a written reply.

Very truly yours,

BANFI VINTERS

/s/

Philip D. Calderone

Vice President, Associate General Counsel

(Pl.'s Ex. 29.)

Pepi's reply letter, dated March 17, 1994, informed Banfi that its rights in the

---

3. John Mariani's mention of the name "Walnut Creek" refers to Banfi's attempt to use the mark "Walnut Creek" in connection with a wine it produced near Walnut Creek, Chile. (Tr. 672:6–20.) The BATF denied Banfi's application for trademark protection, reasoning that any use of the name Walnut Creek might cause consumers to believe that the wine is produced in Walnut Creek, California. (*Id.*) Thus, Banfi was forced to re-name the wine WALNUT CREST. (*Id.*) Compare Pepi's use of "Robert Pepi" as its brand name on its BATF application, as opposed to "Colline di Sassi."

mark were superior to Banfi's because Pepi obtained BATF approval for the mark in 1990, whereas Banfi did not obtain federal trademark registration of its mark until 1992. (Pl.'s Ex. 116.) Pepi further agreed that there is, in fact, "a confusing similarity in the two brand names" and therefore requested that Banfi cease using the COL–DI–SASSO mark and withdraw its trademark registration. (Pl.'s Ex. 116.) Pepi attached various documents to its March 17th letter, including sales figures for ROBERT PEPI COLLINE DI SASSI as well as the wine's BATF label approval. (Tr. 221:13–20.)

After conducting an investigation during which it reviewed sales figures, bills of lading, and trade articles relating to the two wines, Banfi concluded that there was no likelihood of confusion between COL–DI–SASSO and ROBERT PEPI COLLINE DI SASSI, and accordingly declined to cease using the COL–DI–SASSO mark. (Tr. 222:21–223:5.) To further ensure that there would be no confusion, however, Banfi added the word "Banfi" in gold script along the side of COL–DI–SASSO's front label. (Compare Pl.'s Ex. 117 with Pl.'s Ex. 21.) In July 1994, defendant Kendall–Jackson purchased Pepi and continued to demand that Banfi cease using the COL–DI–SASSO mark.

In order to resolve this dispute once and for all, Banfi commenced the instant action pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, seeking a judgment declaring that its use of the COL–DI–SASSO mark does not infringe Kendall–Jackson's use of ROBERT PEPI COLLINE DI SASSI, i.e., that there is no likelihood of confusion. In response, Kendall–Jackson asserted several counterclaims, arguing that it has priority, the marks are confusing, and therefore Banfi should be enjoined from using the COL–DI–SASSO mark.

**E. Facts Relevant to *Polaroid* Analysis to Determine Likelihood of Confusion**

Before this dispute developed, COL–DI–SASSO and ROBERT PEPI COLLINE

DI SASSI co-existed for approximately four years without any evidence of actual confusion. (Tr. 498:15–21, 554:25–555:3.) No one associated with Banfi had ever heard of ROBERT PEPI COLLINE DI SASSI, nor had Pepi or Kendall–Jackson heard of COL–DI–SASSO. (*Id.*) Similarly, there is no evidence that any consumer, distributor, retailer, or critic confused the two wines at issue in this case, as neither Banfi nor Kendall–Jackson ever received misdirected mail or telephone calls. (Tr. 77:2–4, 551:23–552:4, 498:24–499:7.) Furthermore, to date, neither party has conducted a market study to determine whether there is, in fact, a likelihood of confusion. (Tr. 555:4–556:22.) Accordingly, during oral argument on Banfi's Motion for Partial Summary Judgment on September 4, 1998, parties stipulated that there is no actual confusion between the two wines.

Moreover, it should be noted that there is widespread third-party use of names similar to COL–DI–SASSO and ROBERT PEPI COLLINE DI SASSI in the wine industry, including, *inter alia,* CA 'DEL SOLO, COLLI SENESI, COL D'ORCIA, COLLE MANORA, COLLE SOLATO, COLLI FIORENTINI, COLLINA RIONDA DI SERRALUNGA, COLLINE DI AMA, and COLLINE NOVARESI BIANCO. (Pl.'s Ex. 107B–J.)

In terms of the wine industry as a whole, it is well settled that retail wine stores typically segregate wine according to geographic origin, i.e., California, Italy, and Chile. (Tr. 166:11–13.) Similarly, restaurant wine lists either separate wines from different countries, or at a minimum include some indication of each wine's geographic origin, along with the vinter's name and the year and price of the wine. (Tr. 493:6–15.) In addition, while serving bottles of wine, waiters almost uniformly present the bottle so that the customer can examine the label and smell the cork, which, in the case of COL–DI–SASSO is

imprinted with the word "Banfi." (Tr. 438:24–25, 439:25–440:3.)

Lastly, with respect to the sophistication of wine consumers, studies, like the one published by *The U.S. Wine Market Impact Databank Review and Forecast,* have indicated that wine drinkers tend to be older, wealthier, and better educated than the average population. (Pl.'s Ex. 88.) Specifically, wine consumers "60 and over account for some 28% of all wine volume, while those between 50 and 59 consumer another 22 percent." (Pl.'s Ex. 88 at 311.) In addition, "[t]he wine consumer is generally an affluent one—more than forty-one percent have incomes of at least $60,000." (*Id.* at 312.) Finally, survey results indicate that "[a]t least half of the drinkers for all the wine types (with the exception of Sangria) have some college education...." (*Id.* at 313.)

## Conclusions of Law

■ In order to prevail on its claim of trademark infringement under 15 U.S.C. § 1114 or false designation of origin under 15 U.S.C. § 1125(a), Kendall–Jackson, as counterclaimant, must show that there is a likelihood of confusion. *See, e.g., Estee Lauder Inc. v. The Gap,* 108 F.3d 1503, 1508 (2d Cir.1997). Thus, Kendall–Jackson must show that "numerous ordinar[il]ly prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [Banfi]'s mark." *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d at 1510 (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d 1072, 1077 (2d Cir.1993)). The Second Circuit has stated that to establish a likelihood of confusion, it is not sufficient if confusion is merely possible; rather, likelihood of confusion requires that there be a probability of confusion. *See id.*

■ In evaluating whether Kendall–Jackson has established likelihood of confusion, this Court must consider several factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.1961). Those factors are: (1) the strength of the mark of the party alleging infringement; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the party alleging infringement will "bridge the gap;" (5) actual confusion; (6) the alleged infringer's good faith in adopting the mark; (7) the quality of the alleged infringer's product; and (8) the sophistication of the buyers. *See, e.g., Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998); *Estee Lauder v. The Gap, Inc.,* 108 F.3d at 1510; *Arrow Fastener v. Stanley Works,* 59 F.3d 384, 391 (2d Cir.1995).

These factors are not exhaustive, however, nor is any one dispositive of the question of likelihood of confusion. *See Estee Lauder v. The Gap, Inc.,* 108 F.3d at 1510 (citation omitted). Instead, "the proper approach is to weigh each factor in the context of the others to determine if, on balance, a likelihood of confusion exists." *Conopco, Inc. v. Cosmair, Inc.,* 49 F.Supp.2d 242, 248 (S.D.N.Y. 1999) (quoting *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.,* 984 F.2d 567, 572 (2d Cir. 1993)).

## 1. Strength of Kendall–Jackson's Mark

■ It is well settled that the strength of a mark refers to "the distinctiveness, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous source." *McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1130 (2d Cir. 1979) (citation omitted). A mark's strength is measured by considering two factors: "its inherent distinctiveness, and its distinctiveness in the marketplace." *Streetwise v. Vandam, Inc.,* 159 F.3d at 743–44 (citing *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.,* 984 F.2d at 572).

To gauge the inherent distinctiveness of a particular mark, courts classify the mark in one of four categories in increasing order of distinctiveness: generic, descriptive, suggestive, and arbitrary/fanciful. *See*

*Streetwise v. Vandam, Inc.,* 159 F.3d at 744. As the Second Circuit recently explained,

> [t]he strongest marks are arbitrary or fanciful marks, which are entitled to the fullest protection against infringement. The next strongest are suggestive marks, which require "imagination, thought and perception to reach a conclusion as to the nature of goods." A mark that is merely descriptive of its product is entitled to somewhat less protection.

*Time, Inc. v. Petersen Publishing Co. L.L.C.,* 173 F.3d 113, 118 (2d Cir.1999) (citations omitted).

In the instant case, as Kendall–Jackson argues and Banfi more or less concedes, ROBERT PEPI COLLINE DI SASSI is an arbitrary mark because it has no meaning to the average consumer, nor does it suggest the qualities and features of the wine. *See Lexington Management v. Lexington Capital Partners,* 10 F.Supp.2d 271, 280 (S.D.N.Y.1998). However, a finding that a particular mark is arbitrary does not guarantee a determination that the mark is strong. *See Mondo v. Sirco Int'l Corp.,* No. 97 Civ. 3121, 1998 WL 849401, at * 6 (S.D.N.Y. Dec.7, 1998). Instead, this Court still must evaluate the mark's distinctiveness in the marketplace. *See id.*

Courts may consider several factors in determining a particular mark's distinctiveness in the marketplace. For example, the "strength of a mark is [ ] often ascertained by looking at the extent of advertising invested in it, and by the volume of sales of the product." *Nina Ricci, S.A.R.L. v. Gemcraft Ltd.,* 612 F.Supp. 1520, 1527 (S.D.N.Y.1985) (citing *Beneficial Corp. v. Beneficial Capital Corp.,* 529 F.Supp. 445, (S.D.N.Y.1982)). In addition, "extensive third-party use can dilute the strength of a mark." *Lexington Management v. Lexington Capital Partners,* 10 F.Supp.2d at 281.

Here, ROBERT PEPI COLLINE DI SASSI is not particularly distinctive in the marketplace. In the first instance, Kendall–Jackson's advertising expenditures for ROBERT PEPI COLLINE DI SASSI over the last several years have been minimal. Kendall–Jackson's distribution of its wine also has been limited in scale. Furthermore, numerous vinters have used variations of the words "Colline" and "Sassi" in their respective marks. Accordingly, this first *Polaroid* factor weighs in favor of Banfi.

## 2. The Degree of Similarity Between the Two Marks

In determining whether the two marks are similar, and therefore likely to cause consumer confusion, courts should evaluate " 'the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers.' " *Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d at 744 (quoting *Gruner + Jahr USA Publishing v. Meredith Corp.,* 991 F.2d at 1078). In doing so, courts may consider "the products' sizes, logos, typefaces and package designs, among other factors." *See Mondo, Inc. v. Sirco Intern. Corp.,* 1998 WL 849401, at * 7 (citing *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.,* 984 F.2d at 573).

In the case at bar, the two marks are quite dissimilar. Banfi's mark, COL–DI–SASSO, is composed of three words, separated by hyphens, whereas Kendall–Jackson's ROBERT PEPI COLLINE DI SASSI is composed of five words with no hyphens. There are also phonetic differences between the two marks, to wit, the "Col" element of Banfi's COL–DI–SASSO has one syllable, while the "Colline" element of Kendall–Jackson's mark has three syllables and is pronounced "Col-eene." [4] *See Buitoni Foods Corp. v. Gio. Buton,* 680 F.2d 290, 292 (2d Cir.1982) (noting

---

**4.** Even if a prospective purchaser were to mispronounce "Colline" as a two-syllable word, its pronunciation still would differ from that of plaintiff's COL–DI–SASSO mark.

that differences in the pronunciation between the marks at issue rendered the degree of similarity insubstantial). In addition, the English translations of the two marks differ in that COL–DI–SASSO means "hill of stone," and ROBERT PEPI COLLINE DI SASSI translates into "Robert Pepi little hills of stone."

There are also several key distinctions between the products themselves and the overall impression created by the marks that would prevent consumer confusion. For instance, Banfi's front label includes an orange-yellow depiction of a landscape with a black marbleized background. The Banfi wine's front label features the COL–DI–SASSO name, along with the words "Sangiovese" and "Cabernet." Additionally, the word "Banfi" appears on the side of the front label in gold script and on the cork in black script. Banfi's back label features the legends "Produce of Italy," "Red Table Wine of Italy" and "Banfi Vinters."

By contrast, the front label of ROBERT PEPI COLLINE DI SASSI contains neither a depiction nor a marbleized background. Rather, the cream and orange label features the words "Robert Pepi" in the top left corner, with "Colline Di Sassi" and "Napa Valley Sangiovese" in the center. The back label plainly states that the wine is both produced and bottled in Napa Valley, California. Based on the foregoing, this factor also weighs in Banfi's favor.

### 3. The Proximity of the Products

Under this *Polaroid* factor, courts must assess whether the two products at issue compete with each other in the same market. *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d at 745 (citing *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 581 (2d Cir.1991)). In doing so, courts should evaluate "the nature of the products themselves, as well as the structure of the relevant market." *E.S. Originals Inc. v. Stride Rite Corp.*, 656 F.Supp. 484, 488 (S.D.N.Y.1987) (citing *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960,

967 (2d Cir.1981)). Differences in price between the two products also should be considered in measuring product proximity. *See, e.g., Mondo, Inc. v. Sirco Intern. Corp.*, 1998 WL 849401, at * 8; *E.S. Originals Inc. v. Stride Rite Corp.*, 656 F.Supp. at 488–89.

Taking these criteria in turn, this Court concludes that the products in this case differ in ways that may be deemed material to consumers. First, Banfi's COL–DI–SASSO is a 50–50 blend of Sangiovese and Cabernet. On the other hand, ROBERT PEPI COLLINE DI SASSI is both labeled and marketed solely as a Sangiovese, even though it contains a small percentage of Cabernet. Additionally, COL–DI–SASSO is marketed as an affordable, everyday red wine, and as such is sold to distributors, who in turn market the wine to discount drug stores, supermarkets, and mid-range Italian restaurant chains. ROBERT PEPI COLLINE DI SASSI, marketed as a high-end, special occasion wine, is sold exclusively in fine restaurants and retail wine stores. In fact, Kendall–Jackson submitted no evidence to suggest that the two wines at issue were ever sold in the same location, be it restaurant or retail store.

Additionally, Banfi's COL–DI–SASSO is sold for $8 to $10 per bottle in stores, and $16 to $23 per bottle in restaurants. Conversely, ROBERT PEPI COLLINE DI SASSI is sold for double this price, i.e., $20 to $25 in stores, and $35 to $45 in restaurants. Banfi's wine is often sold by the glass in restaurants as a promotional tool, whereas Kendall–Jackson's is rarely, if ever, sold by the glass. Accordingly, this factor is of little help to Kendall–Jackson's claim that there is a likelihood of confusion.

### 4. The Likelihood That the Party Alleging Infringement Will "Bridge the Gap"

This factor considers whether Kendall–Jackson will enter Banfi's market. *See*

*Arrow Fastener Co. v. Stanley Works*, 59 F.3d at 397 (citing *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d at 582). Here, Kendall–Jackson has presented no evidence to suggest that it intends to produce a 50–50 blend of Sangiovese and Cabernet, produce and bottle a wine in Italy, or reduce the price of ROBERT PEPI COLLINE DI SASSI to match that of Banfi's COL–DI–SASSO. This factor, then, favors Banfi.

## 5. Actual Confusion

In the instant matter, Kendall–Jackson stipulated to the absence of actual confusion between the two products. Of equal significance, however, is the fact that Kendall–Jackson was ignorant of Banfi's use of the COL–DI–SASSO mark until 1994 when this dispute arose. This co-existence further buttresses this Court's finding that not only is there no actual confusion, but no likelihood of confusion as well. *See McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d at 1136, n. 6.

## 6. The Alleged Infringer's Good Faith in Adopting the Mark

This factor considers "whether the [alleged infringer] adopted its mark with the intention of capitalizing on [the opposing party's] reputation and goodwill and any confusion between his and the senior user's product." *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d at 397 (*quoting Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d at 583). One indication of a party's good faith is "the selection of a mark that 'reflects the product's characteristics.'" *Ivoclar North America, Inc. v. Dentsply Intern., Inc.*, 41 F.Supp.2d 274, 282 (S.D.N.Y. 1998) (quoting *W.W.W.*

*Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d at 575).

Here, Banfi demonstrated that it conceived its mark at approximately the same time that Kendall–Jackson adopted its own mark, albeit in Italy as opposed to Napa Valley, California. Moreover, Banfi selected the COL–DI–SASSO name because the wine was produced in Tuscany, a region in which sasso rock is prevalent. Conversely, Pepi adopted its ROBERT PEPI COLLINE DI SASSI mark at a family meal, without any relation to "little hills of stone." Banfi also adopted the COL–DI–SASSO mark without ever having heard of ROBERT PEPI COLLINE DI SASSI. Furthermore, Banfi showed its continuing good faith by initiating this instant action, seeking resolution of both party's rights to the marks at issue. Accordingly, this factor weighs against a finding of likelihood of confusion.[5]

## 7. The Quality of the Alleged Infringer's Mark

Courts consistently have concluded that this factor primarily is concerned with "whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d at 398 (citations omitted). In the case at bar, the evidence establishes that Banfi's COL–DI–SASSO is not of lesser quality than ROBERT PEPI COLLINE DI SASSI. On the contrary, since it was first introduced in the United States, COL–DI–SASSO has received favorable reviews from many critics. Thus, this factor favors Banfi.

---

5. Kendall–Jackson contends that after this dispute arose in 1994, Banfi did not continue to use its mark in good faith. Rather, Kendall–Jackson argues that despite having conceded a likelihood of confusion in a March 9, 1994 letter sent by Philip Calderone, Banfi continued to use its mark even after learning that Kendall–Jackson had priority. Having reviewed the evidence presented, this Court disagrees with Kendall–Jackson's conclusion, and instead finds that Calderone's March 9, 1994 letter was not an admission of likelihood of confusion, but rather a blunder by counsel inexperienced in the field of intellectual property. Moreover, this Court finds that the letter was wholly inconsistent with the position taken by John Mariani, Banfi's Chairman Emeritus, in his note attached to the *USA Today* article.

### 8. The Sophistication of the Buyers

This final *Polaroid* factor considers "the general impression of the ordinary consumer, buying under normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue." *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d at 746 (citing *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d at 575). In this case, the only evidence relevant to this factor suggests that wine purchasers are likely to be older, wealthier, and better educated than the general population. Because Kendall–Jackson submitted no evidence to contradict these findings, this factor weighs in Banfi's favor.

### 9. Balancing the *Polaroid* Factors

■ In sum, all eight *Polaroid* factors favor Banfi, albeit in varying degrees. Consequently, there is no likelihood that consumers will confuse Banfi's COL–DI–SASSO with Kendall–Jackson's ROBERT PEPI COLLINE DI SASSI.

### 10. Banfi's Federal Trademark Registration

■ With respect to Kendall–Jackson's claim seeking to cancel Banfi's federal trademark registration for COL–DI–SASSO, it is well settled that a party's failure to show likelihood of confusion, "fatal to the merits of his claim for infringement, is equally fatal to his claim of invalidation and cancellation of [his opponent's] registered mark." *Berliner v. Recordcraft Sales Corp.*, No. 81 Civ. 4358, 1987 WL 5805, at *9 (S.D.N.Y. Jan.15, 1987), *aff'd*, 857 F.2d 1461 (2d Cir.1987). In the instant case, this Court has already concluded that Kendall–Jackson has not sustained its burden of proving likelihood of confusion between ROBERT PEPI COLLINE DI SASSI and COL–DI–SASSO. Thus, Kendall–Jackson lacks standing to seek cancellation of Banfi's federal trademark registration. *See id.*

### Conclusion

This Court has examined Kendall–Jackson's remaining claims and finds that they are without merit. Accordingly, for the reasons stated herein, this Court concludes that there is no likelihood of confusion between the two marks at issue, and directs the Clerk of the Court to enter judgment of non-infringement. In view of this conclusion, this Court dismisses as meritless both parties' remaining claims.

SO ORDERED.